RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0051p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

In re:  JAMES L. BLASZAK,

*Debtor.*

No. 03-4553

COMMONWEALTH LAND TITLE CO.,

*Plaintiff-Appellee,*

*v.*

JAMES L. BLASZAK,

*Defendant-Appellant.*

On Appeal from the Bankruptcy Appellate Panel for the Sixth Circuit.
No. 01-16647—Randolph Baxter, Bankruptcy Judge.

Argued:  October 28, 2004

Decided and Filed:  February 4, 2005

Before:  MERRITT, DAUGHTREY, and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Stephen D. Hobt, Cleveland, Ohio, for Appellant.  Beth Ann Schenz, WELTMAN, WEINBERG & REIS, Cleveland, Ohio, for Appellee.  **ON BRIEF:**  Stephen D. Hobt, Cleveland, Ohio, for Appellant.  Beth Ann Schenz, Kathryn A. Williams, WELTMAN, WEINBERG & REIS, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

MERRITT, Circuit Judge.  Commonwealth Land Title Company sought a determination that the debt owed it by James Blaszak was not dischargeable in Blaszak's bankruptcy pursuant to 11 U.S.C. § 523(a)(4) or § 523(a)(6) on the ground that Blaszak incurred the debt through "fraud or defalcation while acting in a fiduciary capacity."  The Bankruptcy Court for the Northern District of Ohio found the debt nondischargeable and the Bankruptcy Appellate Panel for the Sixth Circuit affirmed.  For the following reasons, we affirm.

1

## I.

James Blaszak started Consumers Land Title Agency, Inc., an Ohio corporation, in December of 1996. The company was formed for the purpose of soliciting applications for title insurance, collecting premiums, issuing title insurance policy binder commitments, and insuring endorsements. Blaszak was the sole owner, sole shareholder, attorney and sole officer (president) of Consumers.

On or about December 12, 1996, Consumers entered into an agency agreement with plaintiff, Commonwealth Land Title Company. The agency agreement appointed and authorized Consumers to be an issuing agent for Commonwealth. The signature line of the agency agreement reads as follows:

**Agent:  Consumers Land Title Agency, Inc.**


        **/s/**
_____

     **By James L. Blaszak**

An issue strongly contested in the Bankruptcy Court was whether Blaszak signed the agency agreement as a promoter of Consumers before its incorporation or as a corporate officer after its incorporation. The Bankruptcy Court found that the articles of incorporation for Consumers were filed on or about December 27, 1996, *after* the signing of the agency agreement on or about December 12, 1996. Based on this finding, Consumers was not yet an incorporated entity in Ohio when Blaszak signed the agency agreement with Commonwealth. Blaszak contends on appeal, as he did below, that this finding is in error and the agency agreement between Consumers and Commonwealth was not signed until December 30, 1996, *after* incorporation. Blaszak filed a Motion to Amend or Alter the Judgment under Rule 59(c), stating that he had new evidence that the 1996 agency agreement was actually signed on December 30, 1996, not December 12, 1996, as found by the Bankruptcy Court. By presenting evidence that the agency agreement was signed *after* the articles of incorporation were filed, Blaszak was attempting to bolster his argument that he signed as a representative of the company, not as its promoter with the attendant personal liability on pre-incorporation contracts. The "new evidence" he wished to submit was an amendment to an agency agreement that referenced an agreement dated December 30, *1997*, not 1996. Blaszak claims that despite the wrong reference date on the amendment, the reference is to the agency agreement at issue in this case and that "1997" is a typographical error and should read "1996," thereby having the amendment serve as evidence that the agreement was actually signed on December 30, 1996. The Bankruptcy Court denied the motion, ruling that the new evidence was not really new evidence because Blaszak found it in his files and it could have been available at trial had he located it earlier and, moreover, the amendment did not appear to relate to the agreement at issue in this case but to a separate agreement that was in fact signed on December 30, 1997.

The agreement remained in force until January 2, 2001, when it was terminated by Commonwealth because Blaszak failed to report and remit moneys from settlements and closings for transactions and failed to remit to Commonwealth the full amount of premiums Consumers had collected on Commonwealth's behalf. Commonwealth claims that these "defalcations" constitute breach of contract of the agency agreement, as well as a breach of fiduciary duty, resulting in losses in excess of $99,000.

Based on its claims of breach of contract and breach of fiduciary duty, Commonwealth filed an Amended Adversary Complaint to Determine the Dischargeability of Debt in the underlying

bankruptcy case of Blaszak. The complaint states that the debt owed by Blaszak to Commonwealth should be nondischargeable under 11 U.S.C. § 523(a)(4) or § 523(a)(6),[1] and that Blaszak was personally liable under the 1996 agency agreement. Blaszak admitted that he was president of Consumers, but denied personal liability under the 1996 agency agreement with Commonwealth, maintaining that he signed the agreement on behalf of Consumers, not as an individual. A two-day trial was held in September of 2002. In January 2003, the Bankruptcy Court for the Northern District of Ohio issued an order finding Blaszak's debt nondischargeable under 11 U.S.C. § 523(a)(4). The Bankruptcy Court determined that (1) under Ohio law, Blaszak was a promoter for Consumers at the time he signed the agency agreement, therefore making him personally liable on the pre-incorporation contract, (2) a fiduciary duty existed between Blaszak and Commonwealth through the 1996 agency agreement, and (3) the fiduciary duty was breached by Blaszak's conduct, resulting in a loss to Commonwealth that could not be discharged in Blaszak's personal bankruptcy proceeding.

Blaszak appealed to the Bankruptcy Appellate Panel for the Sixth Circuit, which affirmed in an oral ruling from the bench. Relying on previous Sixth Circuit cases, it held the debt nondischargeable regardless of whether Blaszak signed the agency agreement as a promoter or an officer of the corporation. For the following reasons, we affirm the judgment of the Bankruptcy Appellate Panel.

## II.

Section 523(a)(4) of the Bankruptcy Code provides that "a discharge under [the Bankruptcy Code] does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Commonwealth contends that the debt is nondischargeable in bankruptcy because of defalcation by Blaszak. This Circuit has defined "defalcation" to encompass embezzlement and misappropriation by a fiduciary, as well as the "failure to properly account for such funds." *Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency)*, 760 F.2d 121, 125 (6th Cir.1985) (internal quotations omitted); *see also Kriegish v. Lipan (In re Kriegish)*, No. 02-1610, 2004 WL 346041, *2-6 (6th Cir. Feb. 23, 2004). In order to find a debt nondischargeable under § 523(a)(4) due to defalcation, we require proof by a preponderance of the evidence of the following: (1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss. *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178-79 (6th Cir. 1997).

We first turn to whether a fiduciary relationship existed between Blaszak and Commonwealth before the alleged defalcation. We have previously decided that the term "fiduciary relationship," for purposes of § 523(a)(4), is determined by federal, not state, law. *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 251 (6th Cir. 1982) ( "The question of who is a fiduciary for purposes of section 17(a)(4) [the predecessor section to § 523(a)(4)] is one of federal law, although state law is important in determining when a trust relationship exists."). Under

---

[1]11 U.S.C. § 523 states in relevant part:

Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

>     (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
>     . . .

>     (6) for willful and malicious injury by the debtor to another entity or to the property
>     of another entity . . . .

*Carlisle Cashway*, therefore, Commonwealth must prove that a trust relationship existed between Blaszak and Commonwealth that would make Blaszak a fiduciary for the purposes of § 523(a)(4). This Court construes the term "fiduciary capacity" found in the defalcation provision of § 523(a)(4) more narrowly than the term is used in other circumstances. For example, in *In re Garver*, we explicitly considered "the nature of the fiduciary relationship required under the defalcation provision of § 523(a)(4)," and held that § 523(a)(4) applied to trustees who misappropriate funds held in trust, and not to those who fail to meet an obligation under a common law fiduciary relationship.

In *In re Interstate Agency*, a case similar to the facts of this case, and the case on which the Bankruptcy Appellate Panel primarily relied in its ruling, we defined defalcation as "encompassing embezzlement, the 'misappropriation of trust funds held in any fiduciary capacity,' and the 'failure to properly account for such funds.'" 760 F.2d at 125 (quoting Black's Law Dictionary, 375 (5th ed.1979)). Although an ordinary agency-principal relationship can involve fiduciary duties, *In re Interstate* holds that an agent-principal relationship standing alone is insufficient to establish the type of fiduciary duty contemplated by § 523. In addition, to satisfy § 523(a)(4) in the context of a defalcation, the debtor must hold funds in trust for a third party to satisfy the fiduciary relationship element of the defalcation provision of § 523(a)(4).

Which leads us to the second requirement: that the fiduciary relationship turn on the existence of a pre-existing express or technical trust whose res encompasses the property at issue. It is well established that the defalcation provision of § 523(a)(4) applies to express or technical trusts, but not to constructive trusts that courts may impose as an equitable remedy. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333(1934). The *Davis* Court explained that "'[t]he language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created.'" *Id.* (quoting *Upshur v. Briscoe*, 138 U.S. 365, 378 (1891)); *accord Peoples Bank & Trust Co. v. Penick (In re Penick)*, No. 97-5446, 1998 WL 344039, *2 (6th Cir. May 28, 1998).

Again, we look to *In re Garver*, where the debtor, Garver, had been the attorney of the creditor, R.E. America, Inc. We held that "[t]he attorney-client relationship, without more, is insufficient to establish the necessary fiduciary relationship for defalcation under § 523(a)(4). Instead the debtor must hold funds in trust for a third party to satisfy the fiduciary relationship element of the defalcation provision of § 523(a)(4)." 116 F.3d at 179. Under this construction of § 523(a)(4), "[t]he mere failure to meet an obligation while acting in a fiduciary capacity does not rise to the level of defalcation; an express or technical trust must also be present." *Id.* The court reemphasized this requirement: "In sum, . . . the defalcation provision of § 523(a)(4) is limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Id.* at 180.

Four requirements are necessary to establish the existence of an express or technical trust: (1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary. *Graffice v. Grim (In re Grim)*, 293 B.R. 156, *166 (Bankr. N.D. Ohio 2003). All four elements of a technical or express trust clearly exist here, as demonstrated by the terms of the agency agreement between Consumers and Commonwealth. The agency agreement demonstrates the pre-incorporation intent to create a trust: The term of the agreement provided that (1) the funds being held by Consumers on behalf of Commonwealth were to be segregated from other funds, (2) remitted on a regular basis to Commonwealth, (3) Blaszak was to serve as trustee, (4) the moneys collected by Consumers on behalf of Commonwealth were to provide the trust res, and (5) Commonwealth was the named beneficiary.

Finally, Blaszak contends that even if his company, Consumers, was a trustee or a fiduciary, he personally cannot be a fiduciary because he signed the agreement as a representative of Consumers, not in his individual capacity. Blaszak's argument is unavailing. We accept the

Bankruptcy Court's finding that Blaszak signed the contract with Commonwealth as a pre-incorporation agreement and that in doing so, he acted as a promoter. Under Ohio law, as the Bankruptcy Court held, he is directly liable to Commonwealth as a promoter absent either a contract that "provides that performance is solely the responsibility of the corporation" or a subsequent novation. *Illinois Controls, Inc. v. Langham*, 70 Ohio St. 3d 512, 639 N.E.2d 771 (1994). The *Langham* case makes it clear that the "mere later adoption of the contract by the corporation will not relieve promoters from liability in the absence of a subsequent novation" because "a party to a contract cannot relieve himself from its obligations by the substitution of another person, without the consent of [the] other party." 639 N.E.2d at 524 (internal quotation marks omitted). Blaszak has not offered evidence that either a contract or novation exists here.

In view of our agreement with the Bankruptcy Court on promoter liability, we need not reach the question decided by the Bankruptcy Appellate Panel, *i.e.*, whether Blaszak would remain personally liable on the debt in the absence of promoter liability and whether the debt would be nondischargeable under § 523. For the foregoing reasons, we affirm the judgment of the Bankruptcy Appellate Panel for the Sixth Circuit.