RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0167p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re:  SAMEER B. PATEL,

　　　　　　　　　　　　　　*Debtor.*

—————————————————————

SAMEER B. PATEL,

　　　　　　　*Defendant-Appellant,*

　　*v.*

SHAMROCK FLOORCOVERING SERVICES, INC.,
　　　　　　　　　　　　*Plaintiff-Appellee.*

No. 08-1265

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-13712—Nancy G. Edmunds, District Judge.

Argued:  April 29, 2009

Decided and Filed:  May 12, 2009

Before:  MARTIN, SUHRHEINRICH, and GIBBONS, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Dean R. Nelson, Jr., CHARLES J. TAUNT & ASSOCIATES, Birmingham, Michigan, for Appellant.  Nik Lulgjuraj, DARNELL & LUGJURAJ, Chelsea, Michigan, for Appellee.  **ON BRIEF:**  Dean R. Nelson, Jr., Erika D. Hart, CHARLES J. TAUNT & ASSOCIATES, Birmingham, Michigan, for Appellant.  Nik Lulgjuraj, DARNELL & LUGJURAJ, Chelsea, Michigan, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Bankruptcy is designed to give debtors a "fresh start." Ordinarily, whatever assets a debtor has are allocated among his creditors and, even though they rarely cover all liabilities, he emerges with no outstanding debts. But there

are exceptions: some debts are not dischargeable, and among these are debts arising from a "defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). This appeal presents the question whether the defendant, Sameer Patel—corporate officer, 50% shareholder, and day-to-day administrator of a "contractor" under the Michigan Builders Trust Fund Act, MICH. COMP. LAWS § 570.151—is a fiduciary such that § 523(a)(4) prevents him from discharging his debt because he breached his fiduciary duty to plaintiff Shamrock Floorcovering. Because Patel was a fiduciary and breached his duties by "defalcation," we affirm the district court's ruling that his debt to Shamrock is not dischargeable.

I.

Empire Limited Partnership, owned and operated by Patel's father, decided to build homes on some of its land plots in Pittsfield Township, Michigan. Sameer Patel was president and 50% shareholder of Empire Builders of Michigan, Inc., the home construction project's general contractor. In this role he handled day-to-day operations: Empire Builders contracted, worked with, and paid subcontractors. And payment was organized as follows: subcontractors sent invoices to Empire Builders, which were then submitted to Empire Limited Partnership. To cover payments, the partnership requested funds under its line of credit from Huntington National Bank. Empire Limited Partnership would then turn over funds to Empire Builders, which paid the subcontractors and covered other expenses.

Yet this arrangement began falling apart after Huntington Bank imposed additional borrowing restrictions on the partnership. In 1998 Huntington required Empire Limited to refinance the Pittsfield construction project's funding by selling unrelated lots to a third-party, but that transaction's closing was delayed, so payments owed piled up. And, in November, Empire Builders, Patel's company, sent plaintiff Shamrock a letter stating that it would pay the $47,058 Empire Builders owed it. When the sale of the unrelated properties was finally complete, the proceeds were placed in escrow and Shamrock received $11,000 in payment. The remainder was scheduled for future payment.

Over the next year Shamrock continued work, and, in August 1999, Patel wrote to Shamrock stating that money Empire Builders owed it was held in escrow and would soon be released, so that Shamrock could expect its money "ASAP." And, two months later, Shamrock agreed to waive the $8,400.00 owed to it in exchange for a promise that $7,048.00

would remain a continuing obligation of Empire Builders and Sameer Patel personally. Soon thereafter, however, Huntington Bank pulled its line of credit. As a result, the home construction project—and both Empire Builders and Empire Limited Partnership themselves—collapsed. The partnership sold the rest of its undeveloped lots and abandoned the remaining phases of the construction project. Shamrock was never paid what it was owed, including the $7,048.00 Patel had personally agreed to pay.

So in 2000 Shamrock sued Empire Builders and Sameer Patel in Michigan state court alleging: (1) breach of contract; (2) fraud/innocent misrepresentation; (3) account stated; (4) action on personal guarantee; and (5) fraudulent conveyance. Shamrock obtained a default judgment in 2003 against Empire Builders and Patel individually for $81,171.79—$73,529.00 in damages and $7,642.79 in interest.

Patel then filed for personal Chapter 7 bankruptcy and listed Shamrock's $81,171.79 state court judgment against Empire Builders and himself as a debt to be discharged. Shamrock brought an adversary proceeding, filing a complaint to contest dischargeability. Patel brought a motion for summary judgment, arguing that the debt was dischargeable. The bankruptcy court ruled that the debt was dischargeable because 11 U.S.C. § 523(a)(4) did not apply.[1] The district court reversed, holding that Patel breached the fiduciary duties he owed Shamrock by failing to account for and pay funds—a "defalcation." Patel appeals.

## II.

We directly review a bankruptcy court's order when appealed from a district court. *Rogan v. Bank One, Nat'l Ass'n (In re Cook)*, 457 F.3d 561, 565 (6th Cir. 2006). We review findings of fact under the clearly erroneous standard and conclusions of law de novo. *Id.*

---

[1]The bankruptcy court also allowed Shamrock to amend its complaint to add a claim alleging that the debt was non-dischargeable under 11 U.S.C. § 523(a)(2). Shamrock did so, and in response Patel filed a motion for summary judgment, which the bankruptcy court also granted. The district court affirmed the bankruptcy court on this point, and Shamrock does not press this § 523(a)(2) ground on appeal.

A.

Bankruptcy is both a creditor's remedy and a debtor's right. Discharging a bankrupt party's debts is central to bankruptcy's purpose of providing a "fresh start" to filers. But discharging debts sometimes harms creditors, so there are statutory exceptions. Some debts are not dischargeable because of their type, *e.g.,* 11 U.S.C. § 523(a)(1) (taxes or customs duties); *id*. § 523(a)(14) (tax), *id.* § 523(a)(5) (alimony and child support), and others are not dischargeable because of public policy, *e.g., id.* § 523(a)(2) (obtaining money, goods, or services by fraud or falsehood); *id.* § 523(a)(6) (wilful or malicious injury); *id.* § 523(a)(9) (death or injury caused by driving under the influence of alcohol or drugs). The provision construed here excludes from discharge debts incurred from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." *Id.* § 523(a)(4).

This exception for "defalcation while acting in a fiduciary capacity" follows from Congress's desire to protect trust relationships: when the bankrupt is a trustee and the creditor a trust beneficiary, § 523(a)(4) points the needle away from discharge; it is yet another example of the law's imposition of high standards of loyalty and care on trustees. *See Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 391 (6th Cir. 2005); *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 331 (1934).[2]

A debt is non-dischargeable as the result of defalcation when a preponderance of the evidence establishes: (1) a pre-existing fiduciary relationship, (2) a breach of that relationship, and (3) resulting loss. *Bd. of Trustees v. Bucci (In re Bucci)*, 493 F.3d 635, 642 (6th Cir. 2007). In *Davis*, the Supreme Court instructed that the term "fiduciary capacity" is narrower here than it is in some other contexts: section 523(a)(4) covers only "express" or "technical trusts" and not trusts arising out of "the very act of wrongdoing." 293 U.S. at 333. These "constructive trusts," which arise *ex maleficio* (at the time the wrong is done), do not satisfy the "fiduciary capacity" requirement because the debtor was not "a trustee before the wrong." *Id.*

---

[2]Section 523(a)(4) has remained essentially unchanged by later revisions to the bankruptcy code.

Establishing an "express" trust is straightforward. The creditor must demonstrate: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *In re Blaszak*, 397 F.3d at 391-92. But Shamrock does not allege an express trust and instead claims the existence of a "technical trust" flowing from duties imposed on Patel by the Michigan Builders Trust Fund Act. *See* MICH. COMP. LAWS § 570.151. In *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, this Court held that the MBTFA satisfied the necessary "requirement that the trust exist separate from the act of wrongdoing" as a matter of federal law, and thus MBTFA "contractors" are fiduciaries to their subcontractors under § 523(a)(4). 691 F.2d 249, 251-52 (6th Cir. 1982). *But see In re Marchiando*, 13 F.3d 1111 (7th Cir. 1994) (holding that Illinois lottery law did not create sufficient "fiduciary relationship" despite professing to create a trust).

But *Johnson* dealt with an individual. The general contractor here, Empire Builders of Michigan, was, by contrast, a corporation of which Patel was president, 50% shareholder, and day-to-day administrator. To the bankruptcy court, this distinction made all the difference—it held that, unless Shamrock provided evidence supporting a "piercing the corporate veil" or "alter ego" theory, then Patel personally did not owe Shamrock any fiduciary duty that could be breached and therefore the debt was dischargeable. It went on to find that Shamrock could prove neither theory. The district court disagreed, however, and held that such an analysis was unnecessary because Patel directly owed Shamrock a fiduciary duty as a "contractor" under the MBTFA.

The district court got it right. Although federal law generally governs, *Johnson* held that "contractors" under the MBTFA are fiduciaries under § 523(a)(4), *id*. at 255-57, so the issue is whether Patel was a "contractor" under the MBTFA, a state-law question. "Contractor" is not expressly defined in the Act, which states:

> In the building construction industry, the building contract fund paid by any person to a *contractor*, or by such person or contractor to a subcontractor shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors, or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

MICH. COMP. LAWS § 570.151 (emphasis added). The Act requires the "contractor" "to first pay laborers, subcontractors and materialmen," *id.* § 570.152, and states that "appropriation by contractors," of money "paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud," *id.* § 570.153. In other words, the MBTFA makes the general contractor a trustee of project funds and imposes on him the duty to pay the beneficiaries—the subcontractors—before himself and his employees and before paying any other expenses. *Johnson*, 691 F.2d at 251.

And, in *People v. Brown*, the Michigan Court of Appeals, construing Michigan law, held that a corporate officer was a "contractor" under the MBTFA—and thus criminally liable—"because she was a corporate officer . . . and because she allegedly participated in violating the MBTFA by allegedly misappropriating [the beneficiary's] funds." 610 N.W.2d 234, 238 (2000) (citing *Au Bon Pain Corp v Artect, Inc*, 653 F.2d 61, 65 (2d Cir. 1981)). It is undisputed here that both of *Brown*'s requirements are met: Patel was an officer and, if a defalcation did occur, Patel must have "participated" because he was the home construction project's day-to-day administrator. Thus, under Michigan law, we are confident that Patel would be an MBTFA "contractor." Yet Patel argues that *Brown*'s holding that corporate officers of general contractors might be criminally liable as MBTFA "contractors" is not enough under § 523(a)(4) because any trust relationship arising under *Brown*'s reasoning would not be in effect until Patel allegedly committed the defalcation; he argues that this is an *ex-maleficio* or after-the-fact constructive trust and thus not sufficient under § 523(a)(4). This is creative, yet unpersuasive. *Brown*'s finding of liability by a corporate officer rested on the officer's failure to perform a duty—not paying her subcontractors first—that was imposed because she was a "contractor" under the MBTFA and this duty must have pre-existed the wrongdoing; as a statutory "contractor," the corporate officer's duty to gather and disburse project funds had been in place all along—long before the defalcation. The trust relationship created under the MBTFA and *Brown* between subcontractor and corporate officer was thus "technical" (and not constructive) and therefore sufficient under

§ 523(a)(4). Thus, *Brown* places Patel in exactly the same shoes as the debtor in *Johnson*.

Indeed: "The fiduciary relationship established by the [MBTFA] arises at the time any monies are paid to the contractor or subcontractor whether or not there are any beneficiaries of the trust at that time and continues until all the trust beneficiaries have been paid." *Johnson,* 691 F.2d at 253. Insofar as Patel argues that his duty to pay subcontractors first under the MBTFA was insufficient to create a technical trust as opposed to a constructive one, he argues that *Johnson* was wrongly decided, which is not something this panel has authority to consider. *See Dingle v. Bioport Corp*., 388 F.3d 209, 215 (6th Cir. 2004). So Patel owed Shamrock a fiduciary duty under § 523(a)(4). Moreover, the federal district and appellate courts that have addressed this question unanimously agree. *See, e.g., Au Bon Pain*, 653 F.2d at 65 (holding that corporate officer could be held liable under MBTFA as a "contractor"); *Trs. of the Mich. Reg'l Council of Carpenters Emple. Benefits Fund v. Accura Concrete Walls, Inc.*, 408 F. Supp. 2d 370, 373 (E.D. Mich. 2005); *Lipan v. Kriegish (In re Kriegish)*, 275 B.R. 838 (E.D. Mich. 2002), *aff'd* 97 Fed. App'x. 4 (6th Cir. 2004). So Patel was a fiduciary to Shamrock under § 523(a)(4).

Yet, in holding otherwise, the bankruptcy judge claimed that Shamrock was required to prove a corporate "piercing the veil" or "alter ego" analysis. Although such analysis might have been relevant at some previous point in this dispute to determine whether this debt should have appeared on Patel's account at all, we are past that: we know the debt is Patel's (and not Empire Builders Inc., alone) because Shamrock obtained a default state court judgment against him and Patel listed the debt in his Chapter 7 bankruptcy. The corporate law hurdle might have been relevant then, but all we are concerned with now is whether the debt is dischargeable under the bankruptcy code. That inquiry follows the statute: was there a fiduciary duty and a breach (defalcation)? As explained above, the fiduciary duty question turns on whether federal law recognizes a preexisting trust relationship created under state law—which itself turns on whether Patel was a "contractor"—and so the bankruptcy court's corporate law

inquiry was irrelevant. Again, Patel, individually, was a fiduciary. *See Johnson*, 691 F.2d at 251.

B.

This does not end the case, however, because there remains the question whether Patel breached his duty via defalcation of money owed to Shamrock. This Court has defined defalcation "to encompass embezzlement and misappropriation by a fiduciary, as well as the failure to properly account for such funds." *In re Blaszak*, 397 F.3d at 390. Shamrock latches on to this latter phrase to claim that the debt is non-dischargeable as "defalcation per se." Yet no such doctrine exists—this Circuit has never countenanced "innocent" or merely "negligent" defalcation.

The most influential early definition of defalcation came from Judge Learned Hand's "carefully equivocal opinion"[3] in *Central Hanover Bank & Trust Co. v. Herbst*, where he stated that because "defalcation" ought not to be redundant with "fraud" and "embezzlement" (also prohibited by the statute), subjective, deliberate wrongdoing was not an element required to establish defalcation. 93 F.2d 510, 512 (2d Cir. 1937). Yet Judge Hand went on to point out that the party in *Herbst* "had not been entirely innocent," *id.*, thus implying that purely innocent mistakes were not sufficient, and in any event expressly reserving that question. *Id.* Contra *Herbst*, however, some circuits have held that "defalcation" might include "innocent" or merely negligent conduct. *See Republic of Rwanda v. Uwinama (In re Uwinama)*, 274 F.3d 806, 811 (4th Cir. 2001); *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1186 (9th Cir. 1996).

But not so in the Sixth Circuit. In *Johnson*, we carefully explained that defalcation in the MBTFA context occurs when evidence supports "the objective fact that monies paid into the building contract fund were used for purposes other than to pay laborers, subcontractors or materialmen first is sufficient to constitute a defalcation under section [523](a)(4) so long as the use was not the result of mere negligence or a mistake of fact." *In re Johnson*, 691 F.2d at 257. Thus, there is no such thing as

---

[3]*In re Baylis*, 313 F.3d 9, 18 (1st Cir. 2002).

"defalcation per se" and instead the debtor must have been objectively reckless in failing to properly account for or allocate funds. *Johnson*, 691 F.2d at 257.**4**

Applying that standard here, we agree with the district court that Patel recklessly misallocated funds and failed to pay his subcontractors first as required by the MBTFA. Although that Act lists the failure to pay subcontractors first as "evidence of the intent to defraud," MICH. COMP. LAWS § 570.153, the bankruptcy standard is a federal one, so this state law language is not dispositive. Nevertheless, Patel testified that he paid his own operating expenses—including payroll, utilities, taxes, and wages to himself for services rendered as president—before he sent any money to Shamrock. And, as the district court observed, Patel's attempts at an accounting were "woefully inadequate"; providing evidence that he paid either subcontractors or general overhead (which is not permissible until the contractors are paid) is not enough. Indeed, Patel conceded at his deposition that his "business operations were sloppy at best," that he did not know if an overall accounting was ever done, and that he did not know exactly how much was owed to Shamrock. We therefore agree with the district court that Patel committed a defalcation and thus the debt owed to Shamrock is not dischargeable under § 523(a)(4).

## III.

For the foregoing reasons, we affirm the district court's determination that the debt was not dischargeable.

---

**4**Subsequent to our holding in *Johnson*, the First and Second Circuits—drawing upon later securities fraud cases—have held that a defalcation only occurs when the debtor has acted with "extreme recklessness." *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 68 (2d Cir. N.Y. 2007); *In re Baylis*, 313 F.3d at 21. We have no occasion today to review our standard in *Johnson* requiring objective recklessness.