**In re Todd Allen ICHIDA and Elizabeth Kimberly Ichida, Debtors.**

**James E. Perry, et al., Plaintiffs,**

**v.**

**Todd Allen Ichida, Defendant.**

**Bankruptcy No. 08–53655. Adversary No. 08–2222.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division, at Columbus.

Aug. 30, 2010.

854

J. Matthew Fisher, Allen, Kuehnle Stovall & Neuman LLP, Columbus, OH, for Plaintiffs.

Michael A. Cox, Columbus, OH, for Defendant.

### *MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT*

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

### I. Introduction

This dischargeability proceeding arises from a failed business relationship between the debtor, Todd Allen Ichida ("Debtor" or "Ichida"), and the plaintiffs, James E. Perry ("Jim Perry"), James C. Perry ("Chris Perry") and Michelle Clawson ("Clawson") (collectively, "Plaintiffs"). In 2005, the Plaintiffs and Ichida entered into an operating agreement ("Operating Agreement") governing Streamline Golf, LLC ("Golf"). Under the Operating Agreement, Golf agreed to develop and acquire software applications for the on-line booking of tee times and then to license the service to public and private golf courses. The Oper-

ating Agreement also called for Golf to provide advertising and marketing services to private golf clubs. *See* Operating Agreement § 4. In addition to Golf, Jim Perry invested in a second business owned and operated by Ichida—Streamline Print Services, Inc. ("Print"). Both companies ceased doing business before Ichida filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

The Plaintiffs commenced this adversary proceeding by filing a complaint seeking a declaratory judgment that the debts owed to them by Ichida are excepted from discharge under 11 U.S.C. § 523(a)(2)(A), (4) and (6). They have filed a motion for summary judgment, requesting that the Court determine as a matter of law that the debts in question are nondischargeable. The Plaintiffs acknowledge that a trial will be necessary to determine the liquidated amount of the debts.

For the reasons explained below, the Court concludes that Ichida is entitled to summary judgment on the Plaintiffs' dischargeability claim based on § 523(a)(4)—for alleged defalcation by the Debtor while acting in a fiduciary capacity. There are genuine issues of material fact that preclude summary judgment on the Plaintiffs' remaining claims.

### II. Jurisdiction

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

### III. Procedural Background

On April 21, 2008, Ichida and his wife Elizabeth ("Debtors") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On May 6, 2008, the Debtors filed their schedules of assets and liabilities (Doc. 19). On Schedule F (Cred-

itors Holding Unsecured Claims) they listed as unliquidated and disputed the following obligations—characterized as claims based on "director/executive liability"—owed by Ichida to the Plaintiffs: (1) a debt owed to Chris Perry in the amount of $1,425,000 ("Chris Perry Debt"); (2) a debt owed to Jim Perry in the amount of $1,425,000 ("Jim Perry Debt"); and (3) a debt owed to Clawson in the amount of $1,425,000 ("Clawson Debt"). The Chris Perry Debt, Jim Perry Debt and Clawson Debt are referred to collectively as the "Debts." [1]

The Plaintiffs' complaint ("Complaint") (Adv.Doc.1) seeks a determination that the Debts are excepted from discharge by § 523(a)(2)(A), (4) and (6). The Complaint sets forth the following claims for relief: (1) Count One seeks a determination that the Debts are nondischargeable under § 523(a)(2)(A), (4) and (6) based on the Debtor's alleged misappropriation of funds from Golf; (2) Count Two seeks a determination of nondischargeability under § 523(a)(2)(A), (4) and (6) based on the Debtor's alleged fraud; (3) Count Three seeks a judgment declaring the Debts nondischargeable under § 523(a)(4) for fraud, defalcation while acting in a fiduciary capacity or embezzlement based on the Debtor's alleged breach of fiduciary duties to the Plaintiffs; (4) Count Four is a claim for breach of an agreement with Clawson, who requests a determination that the Clawson Debt is nondischargeable under § 523(a)(4) and (6); and (5) Count Five is a claim for breach of fiduciary obligations owed to Jim Perry as a shareholder of Print, for which he seeks a determination that the Jim Perry Debt is nondischargeable under § 523(a)(4) and (6).

After a pretrial conference, the parties filed the following: (1) Plaintiffs' Motion for Summary Judgment as to Liability Only ("Motion") (Adv.Doc.22); Defendant's Memorandum Contra Plaintiffs' Motion for Summary Judgment as to Liability Only ("Memorandum Contra") (Adv.Doc.28); and (3) Plaintiffs' Reply to Defendant's Memorandum Contra Plaintiffs' Motion for Summary Judgment as to Liability Only (Adv.Doc.29).

## IV. Undisputed Facts

The Court's Order Establishing Deadlines for Completion of Discovery and Briefing Schedule ("Briefing Order") (Adv. Doc.20) imposed the following requirements:

Any motion for summary judgment shall contain a "Statement of Material Facts." The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact as to which the moving party contends there exists no genuine issue. Each fact listed must be supported by a specific citation to the record.... **Failure of the moving party to submit an accurate and complete statement of Material Facts shall result in denial of the motion.**

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's factual assertions in matching numbered paragraphs. Each denial must be supported by a specific citation to the record. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. **Any facts set forth in the Statement**

---

**1.** The Debtors' Schedules and Statement of Financial Affairs (Doc. 19) reflect that the Plaintiffs' claims alleging "director/executive liability" also are the subject of a pending lawsuit captioned *Perry, et al. v. Ichida et al.,* Case No. 08 CV H 02 0266, in the Delaware County Municipal Court, which was stayed by Ichida's bankruptcy filing.

of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

Briefing Order at 2.

The Motion complies with the requirements of the Briefing Order and provides a statement of material facts setting forth each material fact in numbered paragraphs and with specific citations to the record ("Statement of Facts"). *See* Motion at 4–12. The Memorandum Contra, however, completely misses the mark. It fails to mirror the Statement of Facts, as required by the Briefing Order, and Ichida neither specifically admits nor denies any of the factual allegations made by the Plaintiffs. Ichida also fails to provide any specific citations to the record. Because the Debtor has violated the terms of the Briefing Order, the facts recited below are deemed admitted.

## A. Print

In 1996, Ichida incorporated Print and was its sole shareholder. In 2005, Jim Perry purchased 75 shares of Print stock and became a 19.8% shareholder in the company. In consideration for obtaining an ownership interest in Print, Jim Perry agreed to personally guarantee Print's line of credit with Fifth Third Bank ("Fifth Third"). Jim Perry was never issued a stock certificate evidencing his ownership interest in Print. A third shareholder, Brian W. Slusser, LLC ("Slusser"), invested in Print and also guaranteed the Fifth Third line of credit. Ichida served as Print's CEO; the company, however, did not form a board of directors despite having three shareholders. Nor did Print hold shareholder meetings. Print ceased doing business in February 2008. Jim Perry made a payment in the amount of $750,000 to Fifth Third after the bank sought to enforce his guarantee.

## B. Golf

Golf was formed as a limited liability company on March 25, 2005. There were four members of Golf—Jim Perry, Chris Perry, Clawson and Ichida. Jim Perry and Chris Perry each made initial capital contributions of $100,000 for their respective 20% interests in Golf; Clawson's capital contribution was $50,000 for her 10% interest. In return for receiving a 50% interest in Golf, Ichida made an "in-kind" contribution consisting of, among other things, office space and utilities, 600 hours of website development and various services from Print's staff (including printing and graphic design services). Slusser also made a $175,000 contribution for the purchase of a portion of Ichida's membership interest in Golf. These funds were deposited into one of Print's accounts.

Golf's members entered into the Operating Agreement, which designated Ichida the managing member. The terms of the Operating Agreement required that the funds contributed to Golf be deposited into Golf accounts or invested as designated by members holding 51% or more of the membership interests. The interests were split 50–50 between Ichida and the Plaintiffs. Any withdrawals or disbursements (in an amount exceeding $5,000) of Golf funds from its accounts required at least two signatures.

## V. Arguments of the Parties

The Plaintiffs contend that they are entitled to summary judgment under § 523(a)(4) because Ichida committed defalcation by breaching his fiduciary duties under the Operating Agreement and by embezzling corporate assets. They allege, among other things, that Ichida breached these duties and misappropriated money by using corporate funds to satisfy personal expenses and gambling debts. Motion at 14. Plaintiffs also allege that Ichida did not comply with the requirements imposed

by the Operating Agreement for handling the capital contributions made solely to Golf by the Plaintiffs and others. Specifically, they assert that Ichida failed to deposit the contributions into Golf accounts or, alternatively, that he improperly withdrew funds from Golf and commingled the amounts withdrawn with Print's funds. *Id.* at 13–14. According to the Plaintiffs, these actions taken by Ichida constitute intentional misconduct—not mere negligence. *Id.* at 15. Plaintiffs acknowledge that the Sixth Circuit has narrowly construed the phrase "fiduciary capacity" in applying § 523(a)(4) of the Bankruptcy Code. Yet, urging the Court to adopt and extend the rationale of the Sixth Circuit's decision in *Patel v. Shamrock Floorcovering Servs., Inc. (In re Patel)*, 565 F.3d 963 (6th Cir.2009), they seek a finding as a matter of law that (1) funds invested in Golf were held in trust and (2) Ichida misappropriated trust funds. Motion at 16–17.

Second, the Plaintiffs argue that the Debts are nondischargeable under § 523(a)(2)(A) based on fraud and misrepresentations by Ichida. According to the Plaintiffs, "[a]t every step, Ichida made false representations to Plaintiffs which he knew, or reasonably should have known, were false and to which he had no intention to adhere." *Id.* at 18. In particular, they maintain that Ichida: (1) made payments or incurred debt-without the authority of other Golf members or Print shareholders-in amounts exceeding the limits imposed under the Operating Agreement; (2) failed to hold Golf funds in an agreed upon account; and (3) failed to comply with corporate formalities or agreements made in connection with operating Print. *Id.* at 18–19.

The Plaintiffs contend that they justifiably relied upon the representations made by Ichida and state that they "extracted promises and safeguards upon which the businesses were to be run [ ]" when they entered into their ventures with him. *Id.* at 20. They allege that "[a]long with the business structure, the parties understood that there was a trust relationship that existed between partners to the business relationship." *Id.* According to the Plaintiffs, they incurred extensive damages as a result of their justifiable reliance on Ichida's misrepresentations. *Id.*

For his part, Ichida maintains that the Plaintiffs' financial losses stem from the business failures of Print and Golf, not from concealment, misrepresentation or embezzlement. Ichida attributes the demise of the companies, at least in part, to the Plaintiffs, asserting that "[i]t was understood from the very beginning that Plaintiffs would be more than passive investors; they would also be employees, actively responsible for the success or failure of their investment." Memorandum Contra at 3. In response to the allegations made against him, Ichida claims that the Plaintiffs hired their own accountants to review Print's books and records and were "aware that their investment in Golf was an investment in a start-up company, and that it contained significant risks." *Id.* at 4. Ichida also asserts that the Plaintiffs were fully aware that Golf's expenses would be processed through Print. He agrees with the allegation that "the two businesses were essentially run as one [,]" but maintains that "what [the Plaintiffs] now willfully ignore is that *they knew and understood this the entire time*" *Id.* at 4–5. In addition, Ichida points out that disbursements to the Plaintiffs were paid from Print accounts, thus negating any argument that the Plaintiffs were unaware of the financial structure of the two businesses. *Id.* at 5. Ichida also claims that, in order to keep Golf's business operating, he used his own funds and credit cards to pay many of its expenses, including employee

salaries and vendor payments. *Id.* at 6. According to Ichida, any "alleged misappropriations were [actually] reimbursements for business expenses" he had paid with his personal funds. *Id.* at 8.

Insofar as the Plaintiffs' § 523(a)(4) claim is concerned, Ichida argues that the Court must adhere to the Sixth Circuit's narrow reading of the term "fiduciary" and hold that a defalcation-based nondischargeability claim may arise only in cases involving an express or technical trust. Here, he argues, the existence of an express or a technical trust has not been demonstrated. Ichida also points out that the Plaintiffs have not identified an Ohio statute, like the Michigan statute at issue in *Patel,* that would impose a trust on the funds that Ichida allegedly misappropriated. *Id.* at 10. And he adds that, given the existence of genuine issues of material fact, the Plaintiffs' embezzlement-based § 523(a)(4) claim is not ripe for summary judgment.

As to the claim that the Debts are nondischargeable under § 523(a)(2), Ichida contends that the "Plaintiffs' evidence is insufficient to establish either that Defendant intended to produce misleading materials or that Plaintiffs justifiably relied on Defendant's alleged misrepresentations." *Id.* at 12. In stead, according to Ichida, "[i]ntent and reliance are subjective states of mind that may only be determined upon examination and cross-examination at trial." *Id.*

## VI. Legal Analysis

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Novak v. MetroHealth Med. Ctr.,* 503 F.3d 572, 577 (6th Cir.2007). In reviewing a motion for summary judgment, the Court views the evidence, all facts, and any inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Novak,* 503 F.3d at 577; *Skowronek v. Am. S.S. Co.,* 505 F.3d 482, 484 (6th Cir.2007) (the court "must draw all reasonable inferences in favor of the nonmoving party").

" '[A]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.' " *Niecko v. Emro Mktg. Co.,* 973 F.2d 1296, 1304 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Novak,* 503 F.3d at 577 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Ransier v. Standard Fed. Bank (In re Collins),* 292 B.R. 842, 845 (Bankr.S.D.Ohio 2003).

### B. Nondischargeability—§ 523(a)(2)(A), (4) and (6)

In a dischargeability action the creditor bears the burden of proving each element of its claim by a preponderance of the evidence. *See Grogan v. Garner,*

498 U.S. 279, 287–88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("Because it seems clear that a preponderance of the evidence is sufficient to establish the nondischargeability of some of the types of claims covered by § 523(a), it is fair to infer that Congress intended the ordinary preponderance standard to govern the applicability of all the discharge exceptions." (footnote omitted)); *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir.1998). The Court must construe exceptions to discharge narrowly. *Rembert*, 141 F.3d at 281; *Ker v. Ker (In re Ker)*, 365 B.R. 807, 812 (Bankr.S.D.Ohio 2007) ("In order to afford the honest but unfortunate debtor a fresh start, the Court narrowly construes exceptions to discharge.").

■ The Plaintiffs move for summary judgment on their claim seeking a declaration that the Debts are excepted from discharge by § 523(a)(2)(A) of the Bankruptcy Code. Section 523(a)(2)(A) provides in pertinent part as follows: "A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—... (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—(A) false pretenses, a false representation, or actual fraud ..." 11 U.S.C. § 523(a)(2)(A). A debt for misrepresentation is deemed nondischargeable under § 523(a)(2)(A) when a creditor establishes that:

(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert*, 141 F.3d at 280–81 (footnote omitted). *See Schafer v. Rapp (In re Rapp)*, 375 B.R. 421, 430 (Bankr.S.D.Ohio 2007).

■ The Plaintiffs also seek summary judgment on their claim for relief based on § 523(a)(4), which excepts from discharge debts based on fraud or defalcation while the debtor is acting in a fiduciary capacity. Controlling Sixth Circuit authority limits the scope of this provision to situations involving "trustees who misappropriate funds held in trust ..." *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 391 (6th Cir.2005). Claims based on a "fail[ure] to meet an obligation under a common law fiduciary relationship [ ]" will not give rise to a nondischargeability judgment under § 523(a)(4). *Id.* at 391. Thus, to obtain a judgment excepting a debt from discharge under § 523(a)(4)'s defalcation provision, the creditor must establish the existence of a fiduciary relationship arising from the presence of an express or technical trust. *See id. See also Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639–40 (6th Cir.2007) ("The Sixth Circuit construes the term 'fiduciary capacity' found in the defalcation provision of § 523(a)(4) more narrowly than the term is used in other circumstances.... [W]e [have] adopted a narrow definition of the defalcation provision and held that it does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship. Accordingly, the defalcation provision applies to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." (citations and internal quotation marks omitted)).

■ In addition to moving for summary judgment on their defalcation-based nondischargeability claim, Plaintiffs also

contend that they are entitled to a judgment as a matter of law excepting the Debts from discharge under § 523(a)(4)—based upon alleged embezzlement—and under § 523(a)(6)—based on willful and malicious injury. "Embezzlement" has been defined as " 'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.' " *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172–73 (6th Cir.1997) (quoting *Gribble v. Carlton (In re Carlton)*, 26 B.R. 202, 205 (Bankr.M.D.Tenn.1982)). In order to establish a nondischargeability claim based on embezzlement, a plaintiff must show that "he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Id.* at 1173. *See also Aristocrat Lakewood Nursing Home v. Dryja (In re Dryja)*, 259 B.R. 629, 632 (Bankr. N.D.Ohio 2001). In *Bryant v. Tilley (In re Tilley)*, 286 B.R. 782, 789 (Bankr. D.Colo.2002), the bankruptcy court held that a creditor seeking a judgment excepting a debt from discharge under § 523(a)(4) based on embezzlement must prove the following: "1. Entrustment (property lawfully obtained originally); 2. Of property; 3. Of another; 4. That is misappropriated (used or consumed for a purpose other than that for which it was entrusted); 5. With fraudulent intent."

■ To trigger § 523(a)(6)'s exception to discharge for debts arising from willful-and-malicious injury, a creditor must establish that the obligation in question stems from a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Applying *Geiger*, the Sixth Circuit has held that "unless 'the actor desires to cause [the]

consequences of his act, or … believes that the consequences are substantially certain to result from it,' Restatement (Second) of Torts § 8A, at 15 (1964), he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir.1999).

**C. Ichida is Entitled to Summary Judgment on the Plaintiffs' Defalcation–Based Nondischargeability Claim.**

■ As explained above, § 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). The Plaintiffs allege embezzlement in their Complaint. And while they make the conclusory statement that summary judgment should be granted on their embezzlement-based nondischargeability claim, the Plaintiffs have not demonstrated that they are entitled to judgment as a matter of law. Indeed, the Motion does not specifically set forth the elements of a § 523(a)(4) embezzlement claim much less demonstrate that the summary judgment record supports the entry of judgment on this cause of action. By contrast, a significant portion of the Motion is devoted to Plaintiffs' argument that the Debts should be excepted from discharge by § 523(a)(4) because it arises from Ichida's defalcation while acting in a fiduciary capacity. But this claim fails as a matter of law.

■ A debt arising from defalcation is nondischargeable only if it occurs while the debtor was "acting in a fiduciary capacity[.]" 11 U.S.C. § 523(a)(4). Sixth Circuit caselaw establishes that only fiduciary relationships based on "the existence of a pre-existing express or technical trust whose res encompasses the property at issue" can give rise to a defalcation-based

nondischargeability claim under § 523(a)(4). *Blaszak*, 397 F.3d at 391 ("It is well established that the defalcation provision of § 523(a)(4) applies to express or technical trusts, but not to constructive trusts that courts may impose as an equitable remedy."). The party claiming the existence of an express or a technical trust accordingly must demonstrate the following four requirements: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *Id.* (citing *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 166 (Bankr.N.D.2003)).

The Plaintiffs contend that "there can be no doubt that Ichida stood in a fiduciary capacity." Motion at 13. This may be true. But the Plaintiffs fail to establish the existence of either an express or a technical trust. Rather, the Plaintiffs argue that the Sixth Circuit's *Patel* decision—a case in which the court found that a statutory trust existed—is controlling and establishes that they are entitled to judgment as a matter of law on their defalcation claim. As explained below, however, *Patel* involved the misappropriation of funds that were subject to a statutory trust. Because the Plaintiffs cannot credibly claim that the funds allegedly misappropriated by Ichida were subject to a trust imposed by Ohio statute, *Patel* is inapposite.

In *Patel*, the father of Sameer Patel ("Patel"), the defendant-appellant, owned and operated Empire Limited Partnership ("ELP"). ELP decided to build homes on land it owned in Michigan and contracted with Empire Builders of Michigan, Inc. ("EBM") to act as the construction project's general contractor. Patel was a 50% shareholder and president of EBM. Subcontractors would send invoices to EBM, which would then forward the invoices to ELP for payment. Upon receipt of the subcontractors' invoices, ELP would re-quest funds from its line-of-credit lender and then turn over the loan proceeds to EBM for disbursement to the subcontractors and to cover other expenses. *Patel*, 565 F.3d at 966.

Shamrock Floorcovering Services, Inc. ("Shamrock"), the plaintiff-appellee, was one of the subcontractors on the project. In November 1998, EBM sent a letter to Shamrock advising it that EBM would pay the $47,058 owed to Shamrock. Shamrock, however, received only $11,000, and the remainder was scheduled to be paid at a later date. Shamrock continued to provide services to EBM. In August 1999, EBM advised Shamrock that the remainder of its funds were in escrow, would soon be released, and that Shamrock could expect its payment as soon as possible. Eventually, Shamrock waived payment of $8,400 in return for a promise that $7,048 of the debt owed to it would remain an obligation of EBM and of Patel. ELP's lender ultimately elected not to provide further financing for the development, at which time both EBM and ELP ceased operating. Shamrock was never paid the $7,048 from either EBM or Patel personally. Shamrock obtained a default judgment in state court against EBM and Patel for damages and interest. *Id.* at 966–67.

Patel filed a petition for Chapter 7 relief and listed the judgment against him and EBM on his schedules of liabilities. Shamrock filed a complaint contesting dischargeability under § 523(a)(4). The bankruptcy court ruled that § 523(a)(4) did not apply and discharged the debt; the district court reversed, concluding that Patel had breached his fiduciary duties and committed defalcation. *Id.* at 967. Patel appealed. Because there was no express trust between the parties, Shamrock argued on appeal that the court should find a "technical trust" based on duties imposed on Patel under a Michigan statute—the

Michigan Builders Trust Fund Act ("Builders Act"). Under the Builders Act, any funds paid to a contractor for construction purposes are considered to be trust funds and the contractor a trustee of those funds. *See* Mich. Comp. Laws § 570.151. The question was whether Patel was considered a contractor under the Builders Act and thus the trustee of funds. *See Patel*, 565 F.3d at 968 (noting that the term "contractor" is not defined in the Builders Act).

In an earlier decision by the Sixth Circuit—*Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 253 (6th Cir.1982)—the court held that the Builders Act

> satisfies the requirement that the trust exist separate from the act of wrongdoing and not arise *ex-maleficio*. The fiduciary relationship established by the [Builders Act] arises at the time any monies are paid to the contractor or subcontractor whether or not there are any beneficiaries of the trust and continues until all of the trust beneficiaries have been paid.

*See also Patel*, 565 F.3d at 968 (citing *Johnson* and concluding that the Builders Act "satisfied the necessary 'requirement that the trust exist separate from the act of wrongdoing' as a matter of federal law, and thus [Builders Act] 'contractors' are fiduciaries to their subcontractors under § 523(a)(4))." And the Sixth Circuit in *Patel* concluded that the Builders Act "makes the general contractor a trustee of project funds and imposes on him the duty to pay the beneficiaries—the subcontractors—before himself and his employees and before paying any other expenses." *Patel*, 565 F.3d at 969 (citing *Johnson*, 691 F.2d at 251). Relying on *Johnson* and other caselaw, the court held that Patel was a contractor under the Builders Act and, as such, "was a fiduciary to Shamrock

under § 523(a)(4)." *Id.* (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981) for the proposition that a corporate officer may be liable as a contractor under the Builders Act).

The Plaintiffs do not point to a similar Ohio statutory provision making Ichida a trustee of the funds he allegedly misappropriated from Golf. Rather, they argue generally that the Plaintiffs contributed money to Golf, Ichida agreed to provide various administrative support services to Golf, and the funds were to be used solely for the benefit of Golf. Motion at 16. In addition, according to the Plaintiffs, Ichida failed to "abide by" certain representations concerning the disbursement of funds and management of Golf and Print and misappropriated "corporate funds." Motion at 14. What they fail to articulate, however, is why *Patel* would be controlling here—and the Court concludes that it is not—when the Plaintiffs have failed to identify any Ohio statutory provision that would impose a trust "whose res encompasses the property at issue." *Blaszak*, 397 F.3d at 391.

In the absence of a trust, a debtor's failure to comply with his or her fiduciary duties in and of itself does not constitute defalcation while acting in a fiduciary capacity within the meaning of § 523(a)(4). In fact, as the Sixth Circuit noted in *R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir.1997), "[t]he mere failure to meet an obligation while acting in a fiduciary capacity simply does not rise to the level of defalcation; an express or technical trust must also be present." *See also Castle Nursing Home v. Sullivan (In re Sullivan)*, 19 F. App'x 180, 181 (6th Cir.2001) (unpublished) (stating that the breach of common law fiduciary duties—such as confidence, trust, loyalty and good faith—is not sufficient to establish the existence of an express or technical trust and

does not give rise to a § 523(a)(4) defalcation claim). Thus, the mere failure of Ichida to comply with his fiduciary duties at common law or under the Operating Agreement—without a showing that the funds he allegedly misappropriated were subject to an express, technical or statutory trust—is insufficient to meet the legal standard required for defalcation by a fiduciary under § 523(a)(4). Because the Plaintiffs have failed to make a showing sufficient to establish an express, technical, or statutory trust, Ichida is entitled to summary judgment on the § 523(a)(4) defalcation claim.

### D. The Remaining Claims are Not Ripe for Summary Judgment.

■ The Plaintiffs are not entitled to summary judgment on their remaining nondischargeability claims—the § 523(a)(2)(A) fraud claim, the embezzlement-based § 523(a)(4) claim or the § 523(a)(6) willful-and-malicious injury claim—because there exist disputed issues of material fact, including Ichida's intent and state of mind. *See Behler–Young Co. v. Cousino (In re Cousino),* 364 B.R. 289, 296 (Bankr.N.D.Ohio 2006) ("[S]tate of mind issues, such as fraudulent intent under § 523(a)(2)(A), are generally not appropriate for resolution on summary judgment . . . ." (internal quotation marks omitted)); *The Bank of Kentucky, Inc. v. Ruhe (In re Ruhe),* 2005 WL 4030037 at *2 (Bankr. S.D.Ohio June 21, 2005) ("[C]onsidering the element of intent involved in [a § 523(a)(6)] claim, this Court is satisfied that resolution of this claim by summary judgment is inappropriate." (internal quotation marks omitted)).

### VII. Conclusion

For the foregoing reasons, the Plaintiffs' Motion is **DENIED**. Summary judgment is **GRANTED** in favor of Ichida on Plaintiffs' claim that the Debts are excepted from discharge under § 523(a)(4) for defalcation while acting in a fiduciary capacity. A trial on the remaining claims will be scheduled by separate order of the Court.

**IT IS SO ORDERED.**