RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0380p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

IN RE: KATHRYN MACEWEN CONTI,

          *Debtor.*

_____

KATHRYN MACEWEN CONTI,

          *Appellant,*

  *v.*

ARROWOOD INDEMNITY COMPANY,

          *Appellee.*

> No. 20-1172

Appeal from the United States District Court for the Eastern District of Michigan at Detroit;
No. 2:18-cv-13467—Terrence George Berg, District Judge.

United States Bankruptcy Court for the Eastern District of Michigan at Detroit;
2:17-ap-04711; 2:17-bk-48277—Marci B. McIvor, Judge.

Argued: November 18, 2020

Decided and Filed: December 14, 2020

Before: COLE, Chief Judge; DONALD and READLER, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Austin C. Smith, SMITH LAW GROUP LLP, New York, New York, for Appellant. Britton C. Lewis, CARRUTHERS & ROTH, P.A., Greensboro, North Carolina, for Appellee. **ON BRIEF:** Austin C. Smith, SMITH LAW GROUP LLP, New York, New York, Guy T. Conti, CONTILEGAL, Ann Arbor, Michigan, for Appellant. Britton C. Lewis, CARRUTHERS & ROTH, P.A., Greensboro, North Carolina, Paul R. Hage, JAFFE RAITT HEUER & WEISS, P.C., Southfield, Michigan, for Appellee.

———————————

**OPINION**

———————————

COLE, Chief Judge.   After filing for Chapter 7 bankruptcy, Kathryn MacEwen Conti commenced an adversary proceeding against Arrowood Indemnity Co. seeking to determine that loans she incurred while enrolled at the University of Michigan were not "qualified education loan[s]" under 11 U.S.C. § 523(a)(8)(B) and were thus dischargeable in bankruptcy.   The bankruptcy court granted summary judgment to Arrowood, concluding that the plain language of the loan documents demonstrated they were qualified education loans.   Because the bankruptcy court's conclusion was correct, we affirm its summary judgment in favor of Arrowood.

**I.  BACKGROUND**

Kathryn MacEwen Conti attended the University of Michigan ("Michigan") from 1999 to 2003, obtaining a bachelor's degree in musical arts.   In order to finance three years of her education, Conti applied for five private loans from Citibank (the "Citibank loans"), totaling $76,049.

Conti's loan applications are all expressly "[f]or students attending 4-year colleges and universities."   (*E.g.*, Ex. 2, R. 7-2, PageID 2838.)   They request information regarding the school's identity, the academic year for which the funds are intended, and the amount of the loan requested.   And they specify that the student may "borrow up to the full cost of education less any financial aid [they] are receiving."   (*E.g.*, *id.* § B.)   The applications include a section where the school financial aid office can certify the student applicant's year, enrollment status, loan amount (not to exceed the cost of education when combined with other financial aid), and recommended disbursement dates.   Each application incorporates by reference an attached promissory note as the "entire agreement" between Citibank and the debtor.   (*E.g.*, *id.* § F.)   The promissory notes state that "the proceeds of this loan are to be used for specific educational expenses."   (*E.g.*, *id.* at PageID 2834.)

Citibank appears to have disbursed each loan to Michigan directly.   The record discloses that none of the loan amounts exceeded the cost of attendance at Michigan for the relevant

enrollment period minus the maximum sum of a federal Pell grant for the same period, which is the only other financial aid Conti remembers receiving.

For several years from around 2011 to early 2016, Conti made payments on the Citibank loans, which were eventually assigned to Arrowood. In May 2017, Conti filed for voluntary Chapter 7 bankruptcy in the Eastern District of Michigan. *See In re Conti*, No. 2:17-bk-48277 (Bankr. E.D. Mich. filed May 31, 2017). She listed the five Citibank loans as dischargeable, claiming that they were not excepted under 11 U.S.C. § 523(a)(8). In October 2017, Conti filed this adversary proceeding seeking to determine the same. *See Conti v. Arrowood Indemnity Co. (In re Conti)*, Case No. 2:17-ap-04711 (Bankr. E.D. Mich. filed Oct. 10, 2017).

The parties cross-moved for summary judgment. After a hearing, the bankruptcy court granted summary judgment to Arrowood and denied it to Conti. (*See* Summ. J. Hr'g, R. 7-1, PageID 2767, 2812.) On appeal, the district court affirmed. *Conti v. Arrowood Indemnity Co.*, 612 B.R. 877, 878 (E.D. Mich. 2020). Conti timely appealed to this court.

## II.  ANALYSIS

### A.  Standard of review.

When considering a further appeal of a bankruptcy court decision, we "directly review the decision of the bankruptcy court rather than the district court's review of the bankruptcy court's decision." *Poss v. Morris (In re Morris)*, 260 F.3d 654, 662 (6th Cir. 2001). "[B]ecause a grant of summary judgment presents a pure question of law," our court reviews the bankruptcy court's grant of summary judgment de novo. *Id.* at 663. In bankruptcy adversary proceedings "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hagan v. Baird (In re B & P Baird Holdings, Inc.)*, 759 F. App'x 468, 473 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(a) and citing Fed. R. Bankr. P. 7056). We "must view all facts and inferences in the light most favorable to the non-moving party." *Id.* at 474 (quoting *Hall v. Spencer Cty.*, 583 F.3d 930, 933 (6th Cir. 2009)).

**B. Merits.**

*1. Legal framework*

This appeal concerns whether Conti's Citibank loans are "qualified education loan[s]" under 11 U.S.C. § 523(a)(8)(B) that are non-dischargeable in Chapter 7 bankruptcy (save for "undue hardship" for the debtor, which Conti does not claim). In any § 523(a) analysis, "[t]he creditor . . . bears the burden of proving by a preponderance of the evidence that a debt is excepted from discharge." *Meyers v. IRS (In re Meyers)*, 196 F.3d 622, 624 (6th Cir. 1999) (citing *Grogan v. Garner*, 498 U.S. 279, 290–91 (1991)).

Subsection (8)(B) was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23. It expanded to private student loans § 523(a)(8)'s existing discharge exception for government- and non-profit-backed educational loans. *See* 4 Collier on Bankruptcy ¶ 523.14[2] (Lexis 2020). Subsection (8)(B) defines qualified education loans by cross-reference to the tax code, which in turn defines them, in relevant part, as: "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses." 26 U.S.C. § 221(d)(1). That same section further defines qualified higher education expenses, in relevant part, as "the cost of attendance (as defined in section 472 of the Higher Education Act of 1965, 20 U.S.C. 1087*ll* . . .) at an eligible educational institution, reduced by the sum of" applicable scholarships or financial aid. § 221(d)(2). Finally, 20 U.S.C. § 1087*ll* lists a series of expenses that comprise the "cost of attendance," including sums for tuition & fees, room & board, books, materials, supplies, transportation, and "miscellaneous personal expenses" for enrolled students, in amounts determined by the university. In sum, the issue here is whether Conti's Citibank loans were "incurred . . . solely to pay" her "cost of attendance" at Michigan (as determined by the university) minus any applicable scholarships or aid.

Both parties argue that the court should look to the initial purpose of Conti's loans, rather than their actual uses, to determine whether they fall within the scope of (8)(B). We agree that this is the proper inquiry. First and foremost, the statutory definition of qualified education loan specifically focuses on whether the loan was "incurred . . . to pay" qualified higher education

expenses, rather than on its ultimate uses. *See* 26 U.S.C. § 221(d)(1); *cf. Murphy v. Smith*, 138 S. Ct. 784, 787 (2018) (observing that Congress uses infinitival phrases to express purpose). Second, concerns that have long motivated other circuits to adopt a purpose test for "educational loans" under § 523(a)(8)(A) apply with equal strength for qualified education loans under subsection (8)(B). *See, e.g., Busson-Sokolik v. Milwaukee Sch. of Eng'g (In re Sokolik)*, 635 F.3d 261, 266 (7th Cir. 2011) (adopting the purpose test for § 523(a)(8)(A) loans, following *Murphy v. Pennsylvania Higher Education Assistance Agency (In re Murphy)*, 282 F.3d 868 (5th Cir. 2002)). Most notably, allowing debtors to discharge their student loans simply because they misuse the funds for non-educational expenses would not further Congress' goal of preserving the financial integrity of the student loan system. *See Murphy*, 282 F.3d at 873; *see also Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 742 (6th Cir. 1992).

### 2. Purpose of the Citibank loans

The bankruptcy court correctly concluded that the sole purpose of the Citibank loans was to pay the cost of attendance at Michigan minus the maximum amount of other financial aid Conti received.

A loan's purpose is centrally discerned from the lender's agreement with the borrower. *Cf. Busson-Sokolik*, 635 F.3d at 266–67. Here, the applications and promissory notes expressly: tie the loans to Conti's student status at Michigan for a given enrollment period; limit the loan amount to the "full cost of education less any financial aid you are receiving"; limit use of the loan to "specific educational expenses"; and include an area for Michigan to certify the above information, including that the loan amount in combination with Conti's other financial aid will not exceed Michigan's cost of education. (*E.g.*, Ex. 2, R. 7-2, PageID 2834, 2838.) To the extent we need to look beyond those documents to determine the loan's purpose, Citibank appears to have disbursed the loans to Michigan directly, and the loan amounts did not exceed the cost of attendance at Michigan minus Conti's only applicable scholarships and financial aid (one or more Pell grants). With no contrary evidence in the record, these facts suffice to establish that Conti incurred the Citibank loans "solely to pay qualified higher education expenses" at Michigan. *See* 26 U.S.C. § 221(d)(1).

On appeal, Conti claims that the specific recipient of the loan disbursements and the precise cost of attendance and applicable financial aid are in dispute, as are her and Michigan's status as an "eligible" student and educational institution.  But Conti has forfeited any dispute as to these facts by failing to raise them below.  *See Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1299 (6th Cir. 1992) ("It is well settled law that this court will not consider an error or issue which could have been raised below but was not.").  Moreover, Conti fails to point to any evidence in the record, beyond allegations in her complaint, that creates a dispute regarding these facts.  Conti further argues that her non-receipt of IRS 1098-E forms and Michigan's failure to certify three of the five loans are also disputed material facts.  But the only dispute regarding these facts concerns their legal relevance, and the bankruptcy court correctly concluded they were not material to determining whether Conti's loans are dischargeable.

Conti's other objections to summary judgment for Arrowood fail as well.  Drawing from the tax context, Conti argues her Citibank loans are not qualified education loans because she never filed an IRS Form W-9S expressly certifying that the loans were incurred to pay "qualified higher education expenses" and she never received a Form 1098-E that would follow that certification.  Conti reasons that because subsection (8)(B) defines qualified education loans by cross-reference to the tax code, bankruptcy courts should adopt the same express certification requirement that the IRS established for claiming interest deductions on private student loans. This argument is not persuasive.  Conti offers no authority for the general proposition that importing a definition from a separate statutory context should entail importing any attendant regulations as well, let alone any support for doing so in this specific context.  In fact, the regulations Conti relies on expressly state that the certification requirement has import "*for purposes of* section 6050S and this [tax regulation] section," which have nothing to do with bankruptcy.  26 C.F.R. § 1.6050S-3(e)(2) (emphasis added).  Moreover, it would make little sense for Congress to except private student loans from discharge if debtors could render the loans dischargeable simply by failing to file a certification form.

Alternatively, Conti argues that a debt is not a qualified education loan unless it "very, very specific[ally]" outlines the various educational expenses for which it was incurred, citing to our court's opinion in *Shaffer v. Block*, 705 F.2d 805 (6th Cir. 1983).  (Oral Argument

at 4:14–28; *cf.* Appellant Br. at 13–14.)  *Shaffer*, however, is not a bankruptcy case—rather, it considered regulations for federal Supplemental Nutrition Assistance Program ("SNAP") eligibility.  705 F.2d at 809.  The regulation at issue in *Shaffer*, moreover, expressly required that reimbursements be "specifically earmarked" for permissible educational expenses for them not to count as income for the purposes of SNAP eligibility.  *Id.* at 813–14 (quoting 7 C.F.R. § 273.9(c)(5) (1982)).  No similar requirement applies here.  And Conti offers no other reason why a "very specific" enumeration of permissible expenses should be required for a loan to fall within the scope of (8)(B).

Finally, we see no reason why the "cost of education" and "specific educational expenses" referenced in the Citibank loans indicate anything beyond the university's "cost of attendance" and its enumerated educational expenses detailed in 20 U.S.C. § 1087*ll*.  Especially so when the loan amounts fall within the total cost of attendance, minus any other applicable financial aid.

The undisputed evidence in the record thus establishes that Conti incurred the Citibank loans solely to pay her qualified higher education expenses at Michigan.  *See* 26 U.S.C. § 221(d)(1)–(2).   As such, the loans are qualified education loans under 11 U.S.C. § 523(a)(8)(B).

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the bankruptcy court.