RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0291p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
─────────────────

LESTER DAN PIERCY, JR.; DOLORES J. PIERCY; JOSEPH SHANE PIERCY,

*Debtors.*

─────────────────────────────────────────

M. DUSTIN LONG,

*Plaintiff-Appellant,*

*v.*

LESTER DAN PIERCY, JR.; DOLORES J. PIERCY; JOSEPH SHANE PIERCY,

*Defendants-Appellees.*

Nos. 21-5017/5018/5019

Appeal from the United States District Court for the Eastern District of Tennessee at Knoxville;
No. 3:19-cv-00346—J. Ronnie Greer, District Judge.

United States Bankruptcy Court for the Eastern District of Tennessee at Knoxville;
Nos. 3:18-ap-3043; 3:18-bk-32261—Suzanne H. Bauknight, Judge.

Argued: October 20, 2021

Decided and Filed: December 29, 2021

Before: GILMAN, THAPAR, and NALBANDIAN, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Mark A. Cowan, SWANSON & COWAN, LLP, Morristown, Tennessee, for Appellant. Ryan E. Jarrard, QUIST, FITZPATRICK & JARRARD, PLLC, Knoxville, Tennessee, for Appellees. **ON BRIEF:** Mark A. Cowan, SWANSON & COWAN, LLP, Morristown, Tennessee, for Appellant. Ryan E. Jarrard, QUIST, FITZPATRICK & JARRARD, PLLC, Knoxville, Tennessee, for Appellees.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.   M. Dustin Long obtained a state-court judgment against his business partners Dolores, Joseph, and Lester Piercy.   When the Piercys subsequently filed for bankruptcy, Long initiated adversary proceedings against them, seeking a declaration that the state-court judgment was nondischargeable under 11 U.S.C. § 523(a)(4) because the Piercys' conduct constituted either (1) embezzlement or (2) defalcation while acting in a fiduciary capacity.

The bankruptcy court granted summary judgment in favor of the Piercys, holding that Long was collaterally estopped from arguing that the debt arose from embezzlement because the state-court judgment was based only on breach of contract, and that there was no fiduciary relationship that would support a claim under the defalcation prong because there was no express trust created by the parties.   The district court affirmed.   For the reasons set forth below, we **REVERSE** the judgment of the district court with instructions to **REMAND** the case to the bankruptcy court for further proceedings consistent with this opinion.

## I.  BACKGROUND

### A.  Factual background

Long went into business with the Piercys through their company, Goins Hollow Quarry, LLC, to operate a rock quarry in Grainger County, Tennessee.   According to the agreement signed by Long and the Piercys, each of the four individuals would receive 25% of the profit from the sale of the rock after the owner of the quarry, Hinkle Contracting Company, LLC, was paid a royalty fee.   The agreement was silent, however, as to whether the term "profit" meant *gross profit* after payment of the royalty or *net profit* after payment of the royalty plus the deduction of all other costs of production.

Long sensed that his first two monthly checks from the quarry operation were for significantly less than what he had expected based on the profit that he understood the operation

to be generating.  He later learned that this was because the Piercys were calculating the profit percentages after deducting both the royalty fee due to Hinkle Contracting *and* the other production expenses that the Piercys had incurred.  Although the Piercys had agreed to provide and operate all of the equipment needed to weigh, crush, and process the rock, Long had personally secured the deal with Hinkle Contracting and had agreed to haul away the processed rock.  This division of labor and respective contributions to the enterprise are why Long believed that the four individuals were all supposed to receive equal shares of the total gross profit.

When Long complained about the alleged underpayment, the Piercys padlocked him off the quarry property and threatened to call the sheriff to have Long arrested for trespassing if he returned.  The Piercys then stopped paying Long altogether.

**B.  The Tennessee state-court action**

Long responded by filing suit in the Chancery Court for Grainger County, Tennessee, alleging that the Piercys had wrongfully diverted funds from him.  The complaint, however, did not name any specific cause of action.  It instead sought (1) "a judgment against [the Piercys], jointly and severally, in the amount of $492,060, less any amounts paid before trial, with prejudgment interest at 10%"; (2) a sworn accounting; (3) an injunction that would allow Long the right to use the partnership equipment and to have full access to the partnership's business records; (4) court costs and discretionary costs to be taxed against the Piercys; (5) an attorney's fee award; and (6) any other appropriate relief.  Long later amended his complaint to seek an accounting and judicial supervision for the dissolution and winding up of his partnership with the Piercys pursuant to Tennessee Code Annotated §§ 61-1-405(b) and 61-1-801(5).

Following a bench trial, the chancellor rendered an oral ruling.  He first found that the relevant agreement was entered into between Long and the Piercys in their individual capacities, notwithstanding the agreement being nominally between Long and Goins Hollow Quarry, LLC. The chancellor then laid out the issue before him as follows:

> [T]he really big thing here is whether the percentages for profit that were to be paid to the signatories to the contract, Dustin Long, [Joseph] Shane, [Lester] Dan, and Delores [sic] Piercy, . . . are to be applied to gross profit after payment of the one item.  That is to say, the royalty to Hinkle, or was it net profit after payment

of the royalty to Hinkle and all the other costs of production. That is the biggest issue in the case. The evidence here is, as we all know[,] . . . absolutely contradictory. Mr. Long says, look, we discussed it. The deal was that they were to provide all of the machinery, the labor, the fuel, the insurance, et cetera, . . . and they were to get seventy-five percent and me only twenty-five percent after the payment of the royalty. On the other hand, the Piercys say, no, the deal was that we were to get seventy-five percent of the net profit after the payment of all expenses, not just the two sixty-seven [$2.67 per ton of rock removed] in royalty to Hinkle, but all the costs of production, et cetera. So the evidence is absolutely contradictory.

The chancellor then reviewed the evidence solely to determine the meaning of the term "profit" under the partnership agreement. He ultimately ruled in Long's favor, interpreting the term to mean that Long's share was 25% of the gross profit minus only the royalty due to Hinkle Contracting. As a result, he found that Long was entitled to a judgment for the difference between what the Piercys had paid him in the two checks that he had received and what Long should have received under the proper gross-profit calculation.

But the chancellor rejected Long's claim for lost anticipated profits from the rest of the rock pile. The chancellor found that such damages were speculative, explaining that he was unable to determine why the partnership came to an end. "[Q]uite frankly," he said, "I cannot hold . . . on the preponderance of the evidence that the Piercys breached it." Finally, the chancellor refused to hold any party in contempt, but he assessed costs against the Piercys.

The chancellor's decision was memorialized in a judgment entered against the Piercys in the amount of $151,670.87, which states in its entirety:

> The Court conducted a bench trial in this action on September 19, 2013. In accordance with Tennessee Rule of Civil Procedure 52.01, the Court's findings of fact and conclusions of law appear in a transcript of the ruling, which has been filed with the clerk and master, and is incorporated by reference. Based on the pleadings, the testimony, the exhibits, the arguments of counsel, and the entire record, the Court finds that defendant Goins Hollow Quarry, LLC, should be dismissed, but that the plaintiff is entitled to judgment against the remaining defendants.
>
> Therefore, the Court DISMISSES the claims against Goins Hollow Quarry, LLC, and awards M. Dustin Long JUDGMENT against defendants Delores [sic] Piercy, Shane Piercy, and Lester Dan Piercy Jr., jointly and severally, for $151,670.87

(which has been reduced by the stipulated setoffs of $9,593.34 for the defendants' counterclaim and $2,499.31 for the two checks already paid to Long).

Finally, the Court ORDERS that Long may seek contribution from the defendants if Hinkle Contracting Company, LLC, gets a judgment against him for any unpaid royalties. The Court further holds that each individual party in this action is ultimately responsible for 25% of any reclamation amounts found to be owed to Hinkle Contracting in its Davidson County action, so any party may seek contribution from the others to the extent that he or she is forced to pay more than 25% of the total amount due.

Costs are taxed to Delores [sic] Piercy, Shane Piercy, and Lester Dan Piercy Jr.

**C. The bankruptcy proceedings**

Despite Long's collection efforts, the Piercys did not pay the judgment. They instead proceeded in July 2018 to file respective petitions for relief under Chapter 7 of the United States Bankruptcy Code. Long responded by initiating an adversary proceeding in each case, seeking a declaration that the state-court judgment is nondischargeable under 11 U.S.C. § 523(a)(4) for debts incurred by embezzlement, or through defalcation while acting in a fiduciary capacity.

The bankruptcy court consolidated the three adversary proceedings. In November 2018, the Piercys filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Long's claim was barred by the doctrine of judicial estoppel. Because the Piercys offered documents outside the pleadings in support of their motions to dismiss, the bankruptcy court, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, treated the motions as seeking summary judgment under Rule 56 of those Rules. It thus ordered the parties to supplement their arguments and provide statements of undisputed material facts as required by Rule 56(c).

The bankruptcy court denied the Piercys' motion based on judicial estoppel, but advised that because "there [was] no reference in either the Bench Decision or the Judgment itself concerning fraud," the court was "inclined to determine that res judicata applie[d] in this case to preclude [Long] from raising any claim that was or should have been raised before [the chancellor]." Pursuant to Rule 56(f), the court directed the parties to file supplemental briefs regarding the application of the doctrine of res judicata to the adversary complaints. Both sides complied.

The bankruptcy court subsequently held that, under the narrower doctrine of collateral estoppel, Long was precluded from relitigating the issue of fraud arising from the Piercys' conduct because that issue was raised before and decided by the state court. It also concluded that Long could not proceed under the "defalcation by a fiduciary" prong of 11 U.S.C. § 523(a)(4) because there was no express or technical trust between Long and the Piercys, as is required under Sixth Circuit precedent. Summary judgment was then entered in favor of the Piercys in August 2019, discharging Long's state-court judgment. The district court affirmed the bankruptcy court's decision in November 2020, and this timely appeal followed.

## II. ANALYSIS

### A. Standard of review

When considering an appeal originating from a bankruptcy court's order, we "directly review the decision of the bankruptcy court rather than the district court's review of the bankruptcy court's decision." *Conti v. Arrowood Indem. Co. (In re Conti)*, 982 F.3d 445, 448 (6th Cir. 2020) (citation omitted). "Because a grant of summary judgment presents a pure question of law, the district court reviews the bankruptcy court's grant of summary judgment de novo, as do we in turn." *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 849 (6th Cir. 2002). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Fed. R. Bankr. P. 7056. Throughout our review, we will construe all facts and draw all inferences in the light most favorable to the nonmoving party. *In re Conti*, 982 F.3d at 448.

### B. The application of res judicata and collateral estoppel in bankruptcy proceedings

Res judicata, also known as claim preclusion, "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). This differs from the narrower doctrine of collateral estoppel, also known as issue preclusion, which "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of

a different claim or cause of action." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 461 (6th Cir. 1999) (citation omitted). The difference in these two doctrines is critical as applied to dischargeability proceedings in bankruptcy.

Whether a debt is nondischargeable under 11 U.S.C. § 523(a) is a matter separate from the merits of the debt itself. *Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 195–96 (B.A.P. 6th Cir. 2002) (explaining that a dischargeability action encompasses "two distinct claims"—(1) whether a debt is owed, and (2) whether it is dischargeable (quoting *Jorge v. Mannie (In re Mannie)*, 258 B.R. 440, 444–45 (Bankr. N.D. Cal. 2001))). Res judicata applies to the existence of a debt, but not to the question of whether that debt is dischargeable in bankruptcy because dischargeability is a legal conclusion within the exclusive jurisdiction of the bankruptcy courts. *Brown*, 442 U.S. at 136–39. And because the issue of dischargeability cannot be litigated in a state court, the affirmative defense of res judicata is not available to the Piercys in the context of this case.

Principles of collateral estoppel, on the other hand, do apply to the determination of dischargeability. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). So, when the debt at issue is based on a state-court judgment, the bankruptcy court's ultimate dischargeability determination may be governed by factual issues decided by the state court, provided that the requirements of collateral estoppel are met. *Spilman v. Harley*, 656 F.2d 224, 227–28 (6th Cir. 1981) ("[T]hat Congress intended the bankruptcy court to determine the final result [of] dischargeability . . . does not require the bankruptcy court to redetermine all the underlying facts." When the requirements are met, "collateral estoppel should preclude relitigation of factual issues.").

The bankruptcy court, when asked to determine the potential application of collateral estoppel, must review the record of the state-court proceeding to determine if any factual issues relevant to dischargeability have been actually and necessarily determined by the state court. If not so determined, the bankruptcy court must independently make the necessary factual findings. *See, e.g.*, *MarketGraphics Rsch. Grp., Inc. v. Berge (In re Berge)*, 953 F.3d 907, 912–13, 916 (6th Cir. 2020) (affirming the bankruptcy court's rejection of collateral estoppel where the district-court proceeding that established the debt did not address the debtor's alleged intent to

injure, an element under 11 U.S.C. § 523(a)(6), thus requiring the bankruptcy court to conduct a bench trial to determine that issue).

**C.  The exceptions to discharge under 11 U.S.C. § 523(a)(4)**

In his adversary complaints, Long sought relief under 11 U.S.C. § 523(a)(4), which prohibits the discharge of "any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  The "fiduciary capacity" requirement applies only to the "fraud or defalcation" prong, so "[s]ection 523(a)(4) effectively provides two exceptions to discharge: (1) fraud or defalcation while acting as a fiduciary; and (2) embezzlement or larceny, which does not require a showing [of] a fiduciary relationship." *Hebl v. Windeshausen*, 590 B.R. 871, 877 (W.D. Wis. 2018).  Long sought to proceed under both of these exceptions, commonly referred to as the § 523(a)(4) "prongs."

A creditor proves embezzlement under § 523(a)(4) "by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1173 (6th Cir. 1996).  The only difference between embezzlement and larceny under this subsection is that "embezzled property comes into the debtor's hands lawfully, while larceny requires that the debtor obtain the property unlawfully." *Hebl*, 590 B.R. at 877–88 (citing *In re Weber*, 892 F.2d 534, 538–39 (7th Cir. 1989)).  "Both larceny and embezzlement under § 523(a)(4) require an element of fraudulent intent." *Dean v. Hunter (In re Hunter)*, 484 B.R. 721, 727 (Bankr. E.D. Tenn. 2012) (citation omitted); *see also Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007) ("The 'fraud' required under § 523(a)(4) is 'fraud in fact, involving moral turpitude or *intentional* wrong.'" (emphasis in original) (quoting *Driggs v. Black (In re Black)*, 787 F.2d 503, 507 (10th Cir. 1986))).

A "defalcation" under the "fraud or defalcation while acting in a fiduciary capacity" prong of § 523(a)(4) "encompasses not only embezzlement and misappropriation by a fiduciary, but also the 'failure to properly account for such funds.'" *Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir. 2007) (quoting *Capitol Indem. Corp. v. Interstate Agency, Inc. (In re Interstate Agency)*, 760 F.2d 121, 125 (6th Cir. 1985)).

Notably, embezzlement or larceny under the second prong of § 523(a)(4) requires demonstrating a debtor's fraudulent intent, whereas defalcation under the first prong requires only a showing of gross recklessness. *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269, 275 (2013).

The bankruptcy court held that Long was collaterally estopped from proceeding under the "embezzlement or larceny" prong because the issue of fraud was actually and necessarily decided against him by the state court. In addition, the court held that Long was prevented from proceeding under the "fraud or defalcation" prong because the Piercys were not in a fiduciary relationship with him.

**D. Long was not collaterally estopped from arguing the issue of fraud**

The preclusive effect of a state-court judgment is determined by the law of the state in which the judgment was entered. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). "This requirement applies equally in the context of extending a state court judgment's determination of elements to a question of dischargeability before a bankruptcy court." *CMCO Mortg., LLC v. Hill (In re Hill)*, 957 F.3d 704, 711 (6th Cir. 2020) (citing *Grogan v. Garner*, 498 U.S. 279, 284 (1991)). Because the earlier judgment in this case was entered by a Tennessee state court, we apply Tennessee law in determining what issues may be given preclusive effect.

Relevant Tennessee law provides as follows:

> To prevail with a collateral estoppel claim, the party asserting it must demonstrate (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded. Moreover, in order for the doctrine of collateral estoppel to apply, the issue must not only have been actually litigated and decided, it must also have been necessary to the judgment. Determinations of an issue or issues that are not necessary to a judgment have the characteristics of dicta and will not be given preclusive effect.

*Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009) (citations omitted).

The party asserting the doctrine of collateral estoppel in seeking to bar the relitigation of an issue has the burden to prove that resolving the issue was necessary to the prior judgment. *Dickerson v. Godfrey*, 825 S.W.2d 692, 695 (Tenn. 1992). There is no dispute in the present case that the state-court judgment is a final judgment and that the parties are the same. This leaves the critical question of whether the factual issue of fraud—a necessary element under the "embezzlement or larceny" prong of § 523(a)(4)—was actually litigated and necessary to the judgment in the state-court proceeding.

The bankruptcy court held that the issue of fraud was decided against Long in the state-court action. It explained its reasoning as follows: "The state court was presented with the question of whether Defendants acted fraudulently by their 'diversion of funds,' and it clearly answered in the negative because [the chancellor's] entire decision is based on his perception that the dispute was merely a breach of contract created by a difference of opinion about the definition of 'profits.'" In so ruling, the court concluded that Long had made two distinct sets of allegations in the state-court proceeding—one set based on fraud (diversion of funds) and another not based on fraud (breach of contract). The court reasoned that the state court's exclusive focus on the contractual issue in its bench ruling amounted to a rejection of the factual allegations of fraud, thus precluding Long from relitigating that issue in the bankruptcy proceeding.

In interpreting the state court's decision to be one for "merely a breach of contract" rather than one based on fraud, the bankruptcy court implied that debts arising solely from breach-of-contract claims are always dischargeable under § 523(a)(4) because they are not based on fraud. True enough, this court has previously concluded that "a breach of contract, *without more*, is not embezzlement" under § 523(a)(4). *In re Bucci*, 493 F.3d at 644 (emphasis added). But that does not answer the question of whether a plaintiff holding a judgment for a breach of contract is allowed to present additional evidence in bankruptcy court to establish embezzlement or larceny. *See, e.g.*, *Spinnenweber v. Moran (In re Moran)*, 152 B.R. 493, 496 (Bankr. S.D. Ohio 1993) ("The applicability of 11 U.S.C. § 523 is a federal question and, therefore, this court is not precluded from finding embezzlement was committed by the debtor even though the state court judgment included only breaches of contract and fiduciary duty." (citation omitted)).

We need not decide the issue because the bankruptcy court's ultimate conclusion was in error regardless of whether judgments for breach of contract may form the basis of a claim for nondischargeability under § 523(a)(4). Even assuming *arguendo* that the bankruptcy court correctly held that breach-of-contract judgments may not form the basis of a § 523(a)(4) claim, it erroneously concluded that the state-court judgment here was in fact based solely on breach of contract. The state-court complaint plausibly asserted claims both for breach of contract and for the unlawful diversion of funds, the latter being better understood as a claim for conversion. Because the basis for the state court's ruling is unclear, neither claim is entitled to preclusive effect for the reasons set forth in Part D.3. below. Long is therefore not precluded from relitigating any of the factual issues underlying his judgment.

### 1. The allegations in Long's state-court complaint support claims for both conversion and for breach of contract

In determining what issues were actually and necessarily litigated in state court, we look first to Long's state-court complaint. The complaint did not specifically identify a cause of action. Long asserts that he brought two claims in the state court—one for the unlawful diversion of partnership funds from the quarried rock that had already been sold, which he now casts as a claim for conversion, and another claim for breach of the partnership agreement, which sought expectation damages for the quarried rock that had yet to be sold.

We construe Long's state-court complaint as provided by Tennessee law. Tennessee has a "liberal notice pleading standard," and the Tennessee Supreme Court has instructed that "a complaint in a tort action. . . . must contain direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426, 427 (Tenn. 2011) (citation and emphasis omitted). Judgments may therefore be entered on claims not pled specifically by name so long as the plaintiff pleads enough facts giving rise to the claim. *Worley v. White Tire of Tenn., Inc.*, 182 S.W.3d 306, 309 (Tenn. Ct. App. 2005) (upholding the trial court's judgment for a claim that was not pled by name because "the plaintiff pled facts giving rise to [that] claim").

With that standard in mind, the state-court complaint supports Long's argument. The complaint alleged unlawful "diversion of funds" owed under the partnership agreement. Moreover, it did not explicitly allege breach of contract. In Tennessee, the elements of a conversion claim are "(1) an appropriation of another's tangible property to one's use and benefit; (2) an intentional exercise of dominion over the chattel alleged to have been converted; and (3) defiance of the true owner's rights to the chattel." *White v. Empire Express, Inc.*, 395 S.W.3d 696, 720 (Tenn. Ct. App. 2012).

Long's allegation that the Piercys diverted to themselves funds owed to him under the partnership agreement supports a claim for conversion. *See PNC Multifamily Capital Institutional Fund XXCI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012) ("Identifiable funds are deemed a chattel for purposes of conversion, and conversion may be established where a party shows ownership or the right to possess specific, identifiable money." (quoting 90 C.J.S. *Trover and Conversion* § 16 (2012))). Claims alleging unlawful diversion of partnership funds under Tennessee law have indeed been construed as conversion claims for the purposes of a § 523(a) analysis. *See, e.g.*, *Jenkins v. Schmank (In re Schmank)*, 535 B.R. 243, 265 (Bankr. E.D. Tenn. 2015).

Rule 9.02 of the Tennessee Rules of Civil Procedure requires that conversion claims be pled with particularity. *PNC*, 387 S.W.3d at 555. This rule requires allegations "of or pertaining to a single or specific person, thing, group, class, occasion, etc." *Id*. Long's conversion claim meets this standard. In *PNC*, for instance, the Tennessee Court of Appeals found that a misappropriation or conversion claim was not pled with particularity where the complaint alleged that unspecified defendants caused an indefinite amount of funds to be withdrawn from a partnership account. *Id*. The court compared this to another claim in the same complaint that met the requirements of Rule 9.02 because it gave the date of the alleged misappropriation, the amount, and the number of the cashier's check that was allegedly purchased with the converted funds. *Id*. Long's claim for the diversion of funds is much closer to the latter than to the former because he identifies specific payment amounts due from the Piercys and their limited-liability company.

To be sure, the allegations relating to the diversion of funds could also support a claim for breach of the partnership agreement. *See Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011) (noting that the elements of a breach-of-contract claim under Tennessee law are "the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach"). This shows that conversion and breach-of-contract claims are not mutually exclusive; in fact, they are very often interrelated. *See Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390, 396 (6th Cir. 2019) (explaining that "the state court will necessarily address whether there was a breach of contract in its determination of the conversion claim because adjudication of a conversion claim requires the court to identify to whom the property belongs").

Long's complaint also pled the elements for a breach-of-contract claim that sought anticipatory profits, though that claim was rejected by the chancery court. The complaint sought a dissolution and winding up of the partnership "[i]n accordance with T.C.A. §§ 61-1-405(b) and 61-1-801(5)." Those statutes allow one partner to maintain an action against another to "[e]nforce the partner's rights under the partnership agreement," Tenn. Code Ann. § 61-1-405(b)(1), and to ask a court to dissolve a partnership when one partner "engage[s] in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with that partner," *id*. § 61-1-801(5)(B).

The chancellor addressed Long's claim that sought the amount unlawfully retained by the Piercys separately from the claim that sought anticipatory profits. After granting Long's claim for damages for the unlawfully retained funds, the chancellor denied Long's claim for anticipatory profits because he found the latter claim "speculative" and because he could not determine that the Piercys breached the partnership agreement with regard to continuing operations. This confirms that the chancellor viewed this second claim as one for breach of contract.

In short, Long's state-court complaint supported two distinct claims. The first claim—which was either for conversion or for breach of contract, or for both—stemmed from the retention of funds owed under the partnership agreement. That claim was successful. The second claim was clearly a breach-of-contract claim stemming from the termination of the

partnership. That claim was unsuccessful. Determining which claims were asserted in the state-court complaint and ascertaining the necessary factual findings on those claims is the key to our analysis. We therefore look to the state court's bench decision and accompanying judgment to determine the basis for its ruling.

### 2. The bench opinion and the written judgment do not make clear that the judgment was awarded solely for breach of contract

In concluding that the state-court judgment was awarded solely for breach of contract and, consequently, that the state court must have rejected Long's claim based on the diversion of funds, the bankruptcy court relied on the fact that the chancellor's bench decision focused only on the interpretation of the term "profit" under the partnership agreement. But the focus on the interpretation of the contract is also consistent with a judgment for conversion because, in order to decide the conversion claim, the state court would have needed to determine the parties' contractual rights.

This is a common practice for Tennessee courts adjudicating conversion claims because a plaintiff's claimed rights to the allegedly converted property are often contractual. *See, e.g.*, *Raley v. Brinkman*, 621 S.W.3d 208, 219 (Tenn. Ct. App. 2020) (upholding the trial court's finding of conversion based on underpaid distributions in violation of the parties' contract); *White v. Empire Express, Inc.*, 395 S.W.3d 696, 720 (Tenn. Ct. App. 2012) (affirming the trial court's holding that the defendants were liable for both breach of contract and conversion because, "under the terms of the Lease, [the plaintiff] was the lawful owner of the truck, and the Defendants exercised dominion and control over the truck in defiance of [the plaintiff]'s rights").

There was no dispute in the state-court action that the Piercys had not paid Long any money beyond his first two monthly checks. Long was clearly entitled to at least some additional money under the partnership agreement because the Piercys had not paid Long his 25% even under the Piercys' interpretation of the contract. This means that the Piercys had indisputably withheld, or converted, some of Long's property. *See Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009) ("A cause of action for conversion occurs when the

alleged wrongdoer exercises dominion over the funds in defiance of the owner's rights." (citation, internal quotation marks, and emphasis omitted)).

If the state court was proceeding under a conversion claim, then the only question would have been how much money had been converted, which, in turn, would have required interpreting the meaning of the term "profit" under the partnership agreement. *See Lance Prods., Inc. v. Commerce Union Bank*, 764 S.W.2d 207, 213 (Tenn. Ct. App. 1988) ("The ordinary measure of damages for conversion is the value of the property converted at the time and place of conversion, with interest."). Because that is precisely what the state court did, its judgment was just as likely based on the conversion claim as on the contract claim. And, to be sure, the judgment was possibly based on both. *See, e.g.*, *White*, 395 S.W.3d at 719–20.

The bankruptcy court also relied on the fact that "there [was] no reference to fraud or a 'diversion of funds' in either the Bench Decision or the Judgment itself." But this does not compel the conclusion that Long's conversion claim was rejected. *See Tucker v. Cross (In re Cross)*, No. 08-50531, 2009 WL 981900, at *9 (Bankr. E.D. Tenn. Apr. 13, 2009) ("[T]his court concludes that the state court's refusal or failure to include an issue in the special jury verdict form does not constitute a determination of that issue for collateral estoppel purposes.").

Several factors in the present case refute the bankruptcy court's analysis. First, the "diversion of funds" was explicitly alleged in the state-court complaint. Moreover, because there was no dispute that the Piercys had diverted at least some of Long's money that was due under their agreement, there was no need for the chancellor to address the diversion-of-funds issue in his bench decision. We also note that although the judgment does not reference any diversion of funds, it similarly lacks any reference to being awarded for breach of contract. Finally, the state court's silence as to fraud does not obviate Long's conversion claim because "[w]rongful intent . . . is *not* an element of conversion and, therefore, need not be proved." *See Am. Bank, FSB v. Cornerstone Cmty. Bank*, 733 F.3d 609, 615–16 (6th Cir. 2013) (emphasis and second alteration in original) (quoting *White*, 395 S.W.3d at 720). The state court therefore had no occasion to address the issue of fraud.

Nor does the state court's explanation of its damages award conclusively establish that the judgment's sole basis was for breach of contract. The chancellor awarded Long a judgment for what he should have received based on the gross-profit calculation for the quarried rock already sold. This award is consistent with both a claim for conversion as well as a claim for breach of contract. *See Lance Prods.*, 764 S.W.2d at 213 (measuring damages for conversion under Tennessee law); *Grantham & Mann, Inc. v. Am. Safety Prods., Inc.*, 831 F.2d 596, 601 (6th Cir. 1987) (measuring damages for breach of contract under Tennessee law).

### 3. Because the state-court judgment is unclear as to the basis for its relief, the factual findings and legal conclusions are not necessary to the judgment

The bankruptcy court (and the district court) further erred in failing to consider whether the fraud issue was necessary to the state court's judgment. Tennessee law is clear that where multiple claims possibly form the basis of a judgment and the trial court does not specify the basis for its decision, none of the claims are necessary to the judgment for the purpose of collateral estoppel. *Massengill v. Scott*, 738 S.W.2d 629, 632 (Tenn. 1987) (rejecting the application of collateral estoppel in an action involving multiple claims because the jury returned a general verdict); *cf. White v. Bradley Cnty. Gov't*, No. E2020-00798-COA-R3-CV, 2021 WL 2430814, at *9 (Tenn. Ct. App. June 15, 2021) (applying collateral estoppel because, "unlike in *Massengill*, the record in this case—specifically the district court's memorandum—is clear as to which legal and factual issues were decided in the federal proceedings").

This court has also previously rejected, albeit in an unpublished opinion, the application of collateral estoppel to a state-court judgment in a dischargeability proceeding under § 523(a) where "[t]he state trial court's order [was] unclear as to the basis of its ruling against [the debtor]." *Sanderson Farms, Inc. v. Gasbarro*, 299 F. App'x 499, 506 (6th Cir. 2008) (considering whether the issue of fraud was necessary to the state-court judgment under Ohio law); *see also Trupoint Bank v. Clark (In re Clark)*, No. 08-50899, 2009 WL 693164, at *4 (Bankr. E.D. Tenn. Mar. 11, 2009) (rejecting the application of collateral estoppel to a state-court judgment that "d[id] not set forth any findings of fact and conclusions of law and d[id] not otherwise indicate upon which of the various causes of action the [plaintiff] was being granted

judgment").    Accordingly, Long cannot be precluded from litigating any of the factual allegations he made in support of his judgment.

Nor does the chancellor's rejection of Long's claim for anticipatory profits create any preclusive effect as to fraud.  The bankruptcy court concluded, without explanation, that the chancellor's statement that he could not determine who breached the partnership agreement was a "contrary factual finding" to a claim under § 523(a)(4).  But this explanation by the state court shows only that Long's claim seeking anticipated profits was a breach-of-contract claim alleging that the Piercys had breached the agreement and caused the partnership to fail.  Fraud, however, is not an element of a breach-of-contract action under Tennessee law.  *Custom Kilns, Inc. v. Pierron (In re Pierron)*, 448 B.R. 228, 237 (Bankr. S.D. Ohio 2011) (holding that a judgment for, *inter alia*, breach of contract and conversion under Tennessee law did not preclude either party from arguing whether the debt was dischargeable under § 523(a) because the contract claim "does not require a showing of false pretenses, false representations, or actual fraud").  Nor, for that matter, is fraud an element of a conversion claim.  *White*, 395 S.W.3d at 720.  Any finding as to the Piercys' intent was thus unnecessary in the state-court proceeding.  This means that the issue is not precluded in the bankruptcy-court proceeding, where Long can attempt to prove the Piercys' wrongful intent.

One final point bears mentioning.  The bankruptcy court misplaced the burden by looking to the state court's oral decision and written judgment to conclude that "neither reflects a factual finding sufficient to support a claim under § 523(a)(4)."  An absence of any explicit finding of fraud, or any other element of a § 523(a) claim, would be relevant only if Long, as the plaintiff, was the party seeking the application of collateral estoppel.  *Cf. MarketGraphics Rsch. Grp., Inc. v. Berge (In re Berge)*, 953 F.3d 907, 912–13, 921 (6th Cir. 2020) (rejecting the plaintiff's assertion that Tennessee's collateral-estoppel law precluded the debtor from challenging dischargeability because "the underlying judgment is too vague to carry preclusive effect").

On the other hand, when collateral estoppel is sought to be used *against* a plaintiff in a dischargeability proceeding, the analysis requires more than reviewing the state-court record to see if it contains what the plaintiff needs to make the judgment nondischargeable.  The state-court record should instead be examined only to ensure that the state court did not actually and

necessarily make any findings that are fatal to a successful § 523(a) claim. When the record does not reflect such findings, collateral estoppel does not apply, and a plaintiff may submit new evidence in the bankruptcy court in an attempt to establish the elements of § 523(a). *See Brown v. Felsen*, 442 U.S. 127, 138–39 (1979) ("[T]he bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt."). For these reasons, the bankruptcy court erred in concluding that Long was collaterally estopped from litigating the issue of fraud.

**E.  Partners under Tennessee law are in a fiduciary relationship under the defalcation prong of § 523(a)(4)**

Long also sought to have his state-court judgment declared nondischargeable under the "defalcation prong" of § 523(a). The Bankruptcy Code provides that a debtor is not discharged from any debt for fraud or defalcation while acting in a fiduciary capacity. 11 U.S.C. § 523(a)(4). To except a debt from discharge as a defalcation, the preponderance of the evidence must establish "(1) a preexisting fiduciary relationship, (2) a breach of that fiduciary relationship, and (3) a resulting loss." *Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir. 2007) (quoting *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005)). The threshold issue here is whether the Piercys were in a preexisting fiduciary relationship with Long.

For these purposes, the term "fiduciary capacity" is construed "more narrowly than the term is used in other circumstances." *In re Blaszak*, 397 F.3d at 391. Here, the term "covers only 'express' or 'technical trusts' and not trusts arising out of 'the very act of wrongdoing.'" *Patel v. Shamrock Floorcovering Servs., Inc. (In re Patel)*, 565 F.3d 963, 968 (6th Cir. 2009) (quoting *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934)). Constructive or resulting trusts, "which arise *ex maleficio* (at the time the wrong is done), do not satisfy the 'fiduciary capacity' requirement because the debtor 'was not a trustee before the wrong.'" *Id.* (citation omitted). The "fiduciary capacity" requirement will be found only in "situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *In re Bucci*, 493 F.3d at 639–40 (citation omitted). In short, a creditor-plaintiff in a bankruptcy court establishes the existence of an express or technical trust by demonstrating

"(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *Id*. at 640 (quoting *In re Blaszak*, 397 F.3d at 391–92). Although the question of whether a fiduciary relationship exists is ultimately governed by federal law, "state law is important in determining when a trust relationship exists." *In re Blaszak*, 397 F.3d at 391 (citation omitted).

The state court in the present case acknowledged that Long and the Piercys were partners. And they clearly were partners under Tennessee law. *See Via v. Oehlert*, 347 S.W.3d 224, 229 (Tenn. Ct. App. 2010) ("If the parties' business brings them within the scope of a joint business undertaking for mutual profit—that is to say if they place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them—the result is a partnership whether or not the parties understood that it would be so.").

We note that the "courts are evenly split on the issue of whether a general partner owes a [Bankruptcy] Code § 523(a)(4) fiduciary duty to other general partners." William L. Norton III, 3 *Norton Bankruptcy Law & Practice* 3d § 57:28 (3d ed. 2021) (collecting cases). The only circuit to have ruled definitively on this issue is the Ninth Circuit, which has held that general partners under the laws of Arizona, California, and Washington are trustees and "fiduciaries" over partnership assets for the purposes of § 523(a)(4). *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185–86 (9th Cir. 1996) (Arizona); *Ragsdale v. Haller*, 780 F.2d 794, 796–97 (9th Cir. 1986) (California); *Lewis v. Short (In re Short)*, 818 F.2d 693, 695 (9th Cir. 1987) (Washington). The Fifth Circuit has also held the same as to limited partners under Texas law. *LSP Inv. P'ship v. Bennett (In re Bennett)*, 989 F.2d 779, 787 (5th Cir. 1993).

Bankruptcy courts have come to differing conclusions as to whether partners under Tennessee law are "fiduciaries" for these purposes. *Compare Jenkins v. Schmank (In re Schmank)*, 535 B.R. 243, 261 (Bankr. E.D. Tenn. 2015) (finding that the misuse of partnership funds constituted a "defalcation" and that the partners had a preexisting fiduciary relationship under Tennessee law), *with Robinson v. Thompson (In re Thompson)*, 617 B.R. 296, 317–18 (Bankr. E.D. Tenn. 2020) (finding no express or technical trust in a claim alleging the failure to share partnership profits).

Here, the bankruptcy court held that no fiduciary relationship existed, relying on this court's previous holdings that an "agent-principal relationship standing alone is insufficient to establish the type of fiduciary duty contemplated by § 523," *In re Blaszak*, 397 F.3d at 391, and that this relationship "does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship," *In re Bucci*, 493 F.3d at 639. This reasoning, however, does not give proper weight to the responsibilities placed on partners under Tennessee law.

As this court has previously held, "a statute may create a trust for purposes of § 523(a)(4) if that statute defines the trust res, imposes duties on the trustee, and those duties exist prior to any act of wrongdoing." *Id*. at 640. Under the Tennessee Revised Uniform Partnership Act (TRUPA), partners owe each other the fiduciary duties of loyalty and care. Tenn. Code Ann. § 61–l–404(a). TRUPA provides in pertinent part as follows:

> (a) The only fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care set forth in subsections (b) and (c).
>
> (b) A partner's duty of loyalty to the partnership and the other partners is limited to the following:
>
> > (1) To account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity[.]

*Id*. § 61–l–404(a)–(b)(1).

This statute imposes an unqualified duty on each partner to act as a trustee over all partnership assets. It defines the trust res as "any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property." *Id*. § 61–l–404(b)(1). Beneficiaries include "the partnership and the other partners." *Id*. Most importantly for these purposes, TRUPA imposes a trust on partnership property without regard to any wrongdoing or acts creating a debt. TRUPA thus creates an express trust (and not a constructive or resulting trust) on the partnership's profits, with each partner obligated to act as a trustee for the other partners, as soon as those profits are realized and without regard to whether they were wrongfully withheld.

The "fiduciary capacity" requirement was crystallized in *Ragsdale v. Haller*, 780 F.2d 794 (9th Cir. 1986). There, a partner sought to have his claim for underpaid partnership distributions declared nondischargeable under § 523(a)(4). *Id*. at 795. He relied on a prior iteration of the Uniform Partnership Act that was in place in California at the time. *Id*. at 795–96. That statute provided in pertinent part as follows:

> Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him *without the consent of the other partners* from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

*Id*. at 796 (emphasis added) (quoting Cal. Corp. Code § 15021 (repealed 1996)).

The Ninth Circuit rejected the plaintiff's argument that the words "hold as trustee" established an express trust to make the partners fiduciaries within the meaning of § 523(a)(4) because, "under this statute, the trust arises only when the partner derives profits without consent of the partnership." *Id*. It therefore concluded that the statute created "the sort of trust *ex maleficio* not included within the purview of § 523(a)(4)." *Id*. (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934)). However, because the California Supreme Court had "raised the duties of partners beyond those required by the literal wording" of the state partnership statute and "made all partners trustees over the assets of the partnership," the Ninth Circuit concluded that general partners were in fact "fiduciaries" under § 523(a)(4). *Id*. at 796–97.

TRUPA's plain language, unlike the partnership statute in *Ragsdale*, makes general partners trustees over "any . . . profit . . . derived by the partner in the conduct . . . of the partnership business." Tenn. Code Ann. § 61–l–404(b)(1). This means that the Piercys were holding the partnership profits in an express or technical trust *before* they wrongfully withheld them from Long. *See R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997) ("[T]he debtor must hold funds in trust for a third party to satisfy the fiduciary relationship element of the defalcation provision of § 523(a)(4)."). Long's state-court judgment may therefore be declared nondischargeable as a debt for fraud or defalcation while the Piercys were acting in a fiduciary capacity under § 523(a)(4), provided that Long can produce evidence of their wrongful intent.

### III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court with instructions to **REMAND** the case to the bankruptcy court for further proceedings consistent with this opinion.